# JOHN A. HEDLUND v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

January 17, 1913.

Nos. 17,891—(178).

**Collision with street car — res gestæ — questions for jury.**

In this action to recover for personal injuries received in a collision between an automobile and a street car at a crossing, it is *held:*

1. That the questions of defendant's negligence, contributory negligence, and wilful negligence were for the jury, and the evidence sustains the verdict.

2. A certain declaration of the motorman, made immediately as the car stopped after the accident, *held* to be a spontaneous declaration, part of the transaction, and tending to explain and characterize the accident, and therefore admissible under the so-called "res gestæ" rule. It was also admissible as impeaching evidence.

3. There was no reversible error in the rulings on the admission of evidence, or in the instructions to the jury.

Action in the district court for Hennepin county to recover $26,500 for personal injury. The complaint alleged that, while in the act of driving his automobile in a prudent and careful manner over the

[1] Reported in 139 N. W. 603.

---

*Note.*—On the question of the care required of driver of automobile at railroad crossings, see notes in 21 L.R.A. (N.S.) 794 and 29 L.R.A. (N.S.) 924.

street car tracks and while lawfully upon the street crossing, defendant negligently and wantonly, with full knowledge of the fact that plaintiff was upon the street, crossing its tracks, as he had a right to do, ran one of its electric cars at a very high and dangerous rate of speed, to-wit, 40 miles an hour, over said crossing and into plaintiff's automobile; that by and through the motoneer in charge of the car defendant had full knowledge and notice of the fact that plaintiff was crossing its tracks, and had full knowledge and notice of the perilous position in which plaintiff was placed by reason of such operation of its car, but wholly failed to make any effort to avoid the collision. The answer, while admitting the collision, amounted to a general denial and alleged that whatever injuries plaintiff received were due to his negligence. The case was tried before Hale, J., and a jury which returned a verdict in favor of plaintiff for $6,513.88. From an order denying its motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

John F. Dahl, W. O. Stout and N. M. Thygeson, for appellant.
Ludvig Arctander and John A. Nordin, for respondent.

BUNN, J.

This action was brought to recover damages for personal injuries received by plaintiff in a collision between an automobile driven by him and one of defendant's street cars, at the intersection of Twenty-Second street and Chicago avenue, Minneapolis. Plaintiff recovered a verdict of $6,513.88. Defendant appeals from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The facts necessary to an understanding of the questions involved here are as follows:

Chicago avenue runs north and south, and is crossed by Twenty-Second street at right angles and on the level. Defendant operates a double-track line on Chicago avenue. The crossing is in a thickly settled mixed residence and business portion of the city. Plaintiff, who was in the automobile business, was at about 10 o'clock on the night of the accident driving his car on Twenty-Second street, on the

way to his garage. As he approached Chicago avenue, at some points his vision to the south was obstructed by buildings. He saw no car approaching from that direction, but did see a south-bound car stop and discharge passengers at the crossing. He kept on at about the same rate of speed he had been going, 8 miles an hour, and when he reached the sidewalk crossing discovered a street car approaching from the south and some 500 feet away. Plaintiff testified that he then slowed his speed to three miles an hour, moved to the westerly or south-bound track, looked around the car, which was "standing there or probably moving," and discovered the north-bound car some 125 or 150 feet away. The front of the automobile was then on the easterly track, and plaintiff attempted to increase his speed and get over the track, but was unable to do so, perhaps because of the condition of the crossing. He tried to give the motorman on the car warning by sounding his horn, and "that is the last I remember of it until I woke up in the hospital." The car struck the automobile with great force, and demolished it. Plaintiff was seriously injured.

The complaint charged negligence in running the street car at a high and dangerous rate of speed, in approaching the crossing without having the car under control, and wilful negligence. The answer denied negligence on the part of defendant, and alleged contributory negligence. The trial court denied a motion for a directed verdict, and submitted the case to the jury on the issues of defendant's negligence, contributory negligence of plaintiff, and wilful negligence. The assignments of error raise the usual questions of the sufficiency of the evidence to warrant the submission to the jury of these issues, and to sustain the verdict, and also questions as to the admission of evidence and as to instructions of the court to the jury.

1. On the question of defendant's negligence, it is sufficient to say that in our opinion the evidence was amply sufficient to take the case to the jury and to justify the verdict.

We reach the same conclusion as to the issue of contributory negligence. It would serve no good purpose to analyze the very voluminous evidence on the various points that are claimed to show want of care on plaintiff's part. We have considered the record with care,

120 M.—21.

and on the whole case are unable to hold that it was conclusively shown that plaintiff could have avoided the accident by the use of ordinary care, or that the verdict is not fairly sustained by the evidence on this issue.

The trial court submitted the question of "wilful" negligence to the jury. The correctness of the instruction is not questioned, and could not well be. Defendant's claim is that there was no evidence on which to base the instruction, or a finding that the motorman was guilty of negligence after he discovered plaintiff in a position of peril. The only doubt here is as to whether there was any evidence reasonably tending to show that the motorman discovered the presence of the automobile on the track, and the apparent inability of plaintiff to escape a collision, in time to have stopped the car or slackened its speed, so as to avoid the accident. The evidence did not make a strong showing; but we hold that it was sufficient to justify the instruction, and to prevent our saying that the verdict has no reasonable support on this point.

2. Much of defendant's brief and argument in this court is devoted to an alleged error in receiving on rebuttal the testimony of witnesses as to an exclamation of the motorman, made immediately as the car came to a stop after the collision. He opened the door of the car vestibule and said to the bystanders, "That ⸺ ⸺ ⸺ ran into me, and I rang the bell for him." The words omitted were profane and insulting to plaintiff and a parent. The motorman had testified on his direct examination that he did not see the automobile until his car was within about 20 feet of the point of collision, that he then turned on the reverse, and, that failing, applied the air brake. In short, his direct examination tended to show that he exercised due care after discovering the peril of plaintiff, and that he acted calmly, deliberately, and with good judgment in the emergency that confronted him. He was asked on cross-examination whether he made the exclamation or remarks quoted, and denied it. If the exclamation was admissible as part of the res gestæ, or if it was proper impeachment, it was not error to receive it.

The exclamation was clearly closely enough related to the accident in point of time to be a part of the transaction, and was suffi-

ciently spontaneous; and, if it had any fair tendency to explain or characterize the accident, it was admissible as "res gestæ." The question of the admissibility of the evidence as impeachment in its final analysis comes to the same point. A proper foundation had been laid, and, if the statement of the motorman was relevant to any issue in the case, it was properly received. On the other hand, if the exclamation had no tendency to explain or characterize the accident, it was inadmissible under the so-called "res gestæ" rule; and if it was irrelevant to any issue in the case, it should have been excluded as impeaching testimony, and its reception would·be error.

We think the evidence was properly received. It had a tendency to show that the motorman was not only excited, but immediately charged plaintiff with running into the car, a charge that no evidence supported. It served to indicate a desire to throw the entire blame for the accident upon plaintiff, and to clear the motorman. Not unlike evidence that a person accused of crime has attempted to accuse others of its commission, the statement has a bearing and is relevant on the question of the speaker's guilt. In addition to this, the violent and unjustifiably profane and indecent nature of the remark tended to show that the motorman was not in the calm state of mind that his testimony was apparently intended to show he was in when he discovered the emergency that existed. It seems to us that the exclamation was a part of the transaction, and tended to illustrate, characterize, and explain it. It was a spontaneous declaration, a verbal act, and not a narration of a past event. The authorities are so very numerous, and each case depends so much upon its particular facts, that we think it unnecessary to extend this opinion by a review of the decided cases.

The case of Reem v. St. Paul City Ry. Co. 77 Minn. 503, 80 N. W. 638, 778, is clearly distinguishable. There the negligence consisted in stopping the car for passengers until it was so crowded that plaintiff was pushed off the front platform, on which he was riding. A woman witness was permitted to testify that after the accident she yelled to the conductor to stop the car, but that he said: "Never mind, lady; never mind. Just give me your fare." It was held that this remark of the conductor had·no bearing on the issues in the case, was

no part of the transaction, and did not explain or elucidate or characterize it in any way. In answer to the claim of counsel for plaintiff in the Reem case that the conductor's declaration was admissible, because it indicated "confusion of mind and loss of control of himself or over his car," the court held that the language used showed rather clearly that the conductor was not at all confused or disturbed, and that he was cool and deliberate. It is very clear that the declaration in the Reem case had no tendency to explain anything about the cause of the accident, or to show the state of mind of the conductor, while the declaration of the motorman in the present case did, we think, bear upon the issue of his negligence, and thus tend to explain, elucidate, or characterize the transaction.

In regard to the statements of bystanders, made in reply to the motorman's declaration, they appear to be, as far as admitted, simply a denial of the statement that the gong was sounded. We think these statements were admissible as spontaneous declarations tending to throw light on the accident. In any event, they were not prejudicial.

The statement of the motorman was also properly received as impeaching evidence. The rule is elementary that, when a witnss has denied making a statement, his answer concludes the cross-examiner, if the statement is on an irrelevant matter. But, as we have said in discussing the question of "res gestæ," we hold that the declaration tended to show the state of mind of the declarant, which was a material matter. It also tended to show bias, and for that reason was relevant.

3. The court instructed the jury, on the subject of damages, to consider to what extent plaintiff had recovered, and that, if he had not fully recovered, whether or not his present condition "is liable to be permanent, or more or less permanent." This instruction is assigned as error, because it fails to tell the jury that, before damages for permanent injury can be allowed, there must be a reasonable certainty that the injury is permanent. Not having, either before or after this instruction was given, asked for an instruction as to the degree of proof required to justify the award of permanent damages, or called the attention of the trial court to the omission to give the

rule, defendant is in no position to claim reversible error in the instruction given.

Defendant complains that it was error to submit to the jury the question whether the bell was rung or the gong sounded, because the noise made by the car sufficiently apprised plaintiff of its approach. But the court carefully explained to the jury that whether the gong was sounded or bell rung was immaterial, if the car made sufficient noise to warn plaintiff of its approach, and we cannot say that the evidence was such that the court should have told the jury that they could not consider the matter of the bell or gong.

We are satisfied that the questions in this case were for the jury, that there was no reversible error in the admission of evidence or in the instructions, that there was a fair trial, and that the verdict for plaintiff is fairly sustained by the evidence. The result is that the order appealed from should be affirmed.

Order affirmed.