## HERMAN SASSEN v. FRANK HAEGLE.[1]

May 22, 1914.

Nos. 18,460—(58).

**Measure of damages.**

1. The measure of damages recoverable by a lessor against the lessee for hauling away manure from a leased farm, instead of hauling and spreading it upon the farm as stipulated in the lease, is the reasonable cost or value of the manure spread as agreed.

**Motion for new trial — erroneous charge — failure to take exception.**

2. An instruction fundamentally wrong, or which has the effect of preventing a verdict for a substantial amount on a cause of action well pleaded and proven, may be assigned as error on a motion for a new trial, even though at the trial the attorney states that he has no exception to the charge. It is otherwise with inaccuracies of expression, failure to instruct on every hypothesis, or inadequate treatment of some phase of the controversy.

**Lease — waiver of right to remove fixtures.**

3. A tenant in possession, owning and having the right to remove fixtures placed on the premises at his own expense and for his personal convenience, does not, by entering a new lease wherein he covenants to keep the buildings

[1] Reported in 147 N. W. 445.

Note.—On the question of the rights of landlord and tenant in respect to manure on leased premises, see note in 31 L.R.A.(N.S.) 698. And as to the right of tenant to remove straw or manure, see note in 18 L.R.A.(N.S.) 572.

Upon the effect of renewing tenancy without reserving right to remove fixtures, see notes in 1 L.R.A.(N.S.) 1192 and 17 L.R.A.(N.S.) 1135.

The authorities on the general question of possession as notice of title are gathered in an extensive note in 13 L.R.A.(N.S.) 51.

and improvements in repair, thereby waive his ownership and right to remove such fixtures during the term of the new lease.

**Notice to purchaser of tenant's rights.**

4. A purchaser of real estate in the possession of a tenant is chargeable with notice of all the interest and rights of the tenant therein.

Action in the district court for Nobles county to recover $368.75. The case was tried before Nelson, J., and a jury which returned a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*E. J. Jones* and *E. H. Canfield,* for appellant.

*J. A. Town,* for respondent.

Holt, J.

The action is for damages for alleged violations of the covenants of a farm lease. The defendant prevailed and plaintiff appeals from the order denying a new trial.

The brief facts are these: For over 25 years defendant had been a tenant of his father upon the farm in question. While such tenant he placed on the farm a water tank, watering and feeding troughs, furnished storm windows and doors for the dwelling house, installed a wagon scale on a stone foundation, affixed a hay carrier track to the barn, and fitted up a grain elevator in the granary, also placed therein a feed grinder; this elevator and grinder being operated by an old threshing machine horsepower connected therewith. Defendant testified that all this property was his, that he bought and installed the same while a tenant with the permission of his father, the owner of the farm, that it was to remain the property of defendant. The father admits this and testified that in the fall of 1909, at the time of the sale of the farm, he told plaintiff that this property belonged to defendant. This however is denied by plaintiff, except as to the tank and the troughs mentioned. On November 1, 1909, after plaintiff bought the farm he made the written lease in question with defendant, for one year from and after March 1, 1910. He was in possession as tenant when plaintiff bargained for the farm and remained so in possession until the last of February 1911, when

he removed, taking away the property above mentioned. The action is based on covenants in the lease to the import that defendant would not remove any straw or manure from the farm, but spread upon said premises all manure made thereon; and that he would at the expiration of the lease surrender the premises in as good repair as when taken, and that he would while in possession keep and maintain all buildings, stables and improvements on the farm in good order. The breach alleged was: First, that defendant removed from the farm 125 loads of manure made thereon which with the spreading thereof was alleged to be worth $93.75; and, secondly, that he took away the wagon scales, hay carrier, storm windows and doors, elevator, feed mill and horse power mentioned, thereby damaging the plaintiff in the sum of $275. The answer admitted taking away 20 loads of manure, but alleged that more than that amount was made from feed not produced on the farm, and denied any damage. The taking away of the wagon scales and property described in the complaint was admitted, but it was alleged that all thereof was defendant's personal property.

The first assignment of error relates to the court's charge upon the measure of damages for failure to spread upon the farm the manure made thereon. The jury were instructed that defendant hauled the manure away from the buildings, so that in estimating damages the value of the labor in taking and hauling it from the barn should not be included, but simply the value the manure would have been to the land had it been spread thereon as agreed. While this instruction as to the measure of damages appears plausible, we believe it unsound. It may be true that the landlord's twofold purpose, in exacting the covenant, was the cleanliness of the barnyard and the fertility of the farm, the first of which the defendant carried out, but failed as to the last. But it is also true that the landlord had a perfect right to stipulate as to the disposal of the manure or as to the way in which the farm should be worked, and the tenant cannot evade compliance by showing that the farm became more valuable or fertile by omitting the agreed work or doing other work. Plaintiff's pleading and proof was directed to the reasonable value of performing what defendant agreed but failed to perform. Such reasonable cost or value was the

natural and proximate damages. The question is not whether plaintiff made a wise or foolish agreement. He had a right to have it performed as made, and the resulting damage, in case of failure, is the reasonable cost of performance. Whether such performance affects the value of the farm was no concern of defendant.

The defendant contends that plaintiff is not in position to ask a reversal upon any error in the charge, for when the court, at its conclusion, inquired of counsel if there were any exceptions to it, both answered in the negative. Inaccuracy in expression, failure to instruct on every possible hypothesis, or inadequate treatment of some phase of the law applicable to the controversy does not, as a rule, entitle a party to take advantage thereof upon the motion for a new trial where, had the shortcoming in the charge been called to the attention of the court by an exception or suggestion before the jury retired, we might readily assume that the court would have promptly corrected the inadvertence. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; Bailey v. Grand Forks Lumber Co. 107 Minn. 192, 119 N. W. 786; Hedlund v. Minneapolis Street Ry. Co. 120 Minn. 319, 139 N. W. 603; Robinson v. Great Northern Ry. Co. 123 Minn. 495, 144 N. W. 220. But we think the statute, section 7830, G. S. 1913, was designed to prevent a miscarriage of justice, and to that end allows counsel an opportunity to urge on a motion for a new trial a fundamental error in the charge although, when it was given, neither he nor the court perceived the mistake. Kincaid v. Jungkunz, 109 Minn. 400, 123 N. W. 1082; Robertson v. Benton, 88 Minn. 151, 92 N. W. 538; Melges v. Duluth Brewing & Malting Co. 118 Minn. 139, 136 N. W. 401; State v. Halverson, 103 Minn. 265, 114 N. W. 957, 14 L.R.A.(N.S.) 947, 123 Am. St. 326. The instruction as to the measure of damages was erroneous and rendered a recovery impossible, although the pleading and uncontradicted proof entitled plaintiff to substantial damages for failure to spread at least 20 loads of manure on the farm. This renders a new trial unavoidable as to the the first cause of action. In passing, it may be said that there is no merit in appellant's argument that he made a case for conversion of the manure, for although he might have such a cause of action he neither alleged it nor adduced proof thereof.

As to the second cause of action, namely, for damages for removing the so-called fixtures, we conclude that the criticism of the charge relates to inaccuracies of expression or lack of completeness which would have been easily remedied had counsel called attention thereto, at the time, unless the court was wrong in assuming that defendant did not waive his right to the property mentioned by accepting the lease from plaintiff while it remained in position on the farm, or in not submitting to the jury whether plaintiff had actual knowledge of the ownership of the property in dispute when he bought the farm. The evidence was uncontradicted that as between defendant and his father, plaintiff's grantor, the property was the personal property of defendant, placed there with the permission of the landlord at the tenant's expense and for his personal convenience in operating the farm. After the property was installed and several years prior to plaintiff's purchase, the father conveyed the farm to the son, who gave a mortgage thereon, and on his own adjoining farm, to secure a large loan and then reconveyed this farm to the father. The claim was that this was not intended as a transfer or sale of the farm, but was merely a mode by which the father allowed his farm to become security for a loan to the son. The jury found under proper instruction that, as between father and son, the title never vested in the latter so as to merge the title of the so-called fixtures in the fee. The jury also found upon ample proof that all the property in controversy could be and was removed without material injury to the freehold.

We reach the conclusion that the trial court was right in holding that, by taking a new lease from plaintiff with the covenants referred to, without first removing the property in dispute, defendant did not abandon his right or title to such property and it did not become a part of the real estate. We are well aware of the numerous authorities supporting appellant's contention. They are collated in the note to Wadman v. Burke, 1 L.R.A.(N.S.) 1192. But we are inclined to follow the rule of Kerr v. Kingsbury, 39 Mich. 150, 33 Am. Rep. 362; Second Nat. Bank v. O. E. Merrill Co. 69 Wis. 501, 34 N. W. 514; Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 907; Radey v. McCurdy, 209 Pa. St. 306, 58 Atl. 558, 67 L.R.A. 359, 103 Am. St. 1009; Daly v. Simonson, 126 Iowa,

716, 102 N. W. 780; Ray v. Young (Iowa) 142 N. W. 393, 46 L.R.A.(N.S.) 947; Bergh v. Herring-Hall-Marvin Safe Co. 136 Fed: 368, 69 C. C. A. 212, 70 L.R.A. 756. Judge Cooley in Kerr v. Kingsbury, supra, states: "A regard for the succeeding interests is the only substantial reason for the rule which requires the tenant to remove his fixtures during the term.     *   *   *   But why the right should be lost when the tenant, instead of surrendering possession, takes a renewal of his lease, is not very apparent. There is certainly no reason of public policy to sustain such a doctrine; on the contrary, the reasons which saved to the tenant his right to fixtures in the first place are equally influential to save to him on a renewal what was unquestionably his before. What could possibly be more absurd than a rule of law which in effect says to the tenant who is about to obtain a renewal: 'If you will be at the expense and trouble, and incur the loss, of removing your erections during the term, and of afterwards bringing them back again, they shall be yours; otherwise you will be deemed to abandon them to your landlord.' "

The covenant of the lease was to keep and repair all buildings and improvements on said farm, but, of course, this relates to the property of the lessor and not to the chattels of the tenant. Many courts have adopted a more liberal rule as to the tenant's right to remove trade fixtures and domestic fixtures than is applied to those conveniences in the nature of fixtures which may be installed by a tenant on agricultural lands. In the case of trade and domestic fixtures, no consent or agreement of the landlord is necessary in order to remain the personal chattels of the tenant and be removable, provided it may be done without material injury to premises rented. It has been stated by high authority that no sound reason exists why this should not apply to those conveniences which a farm tenant installs at his own expense in order to operate the farm more advantageously to him. Taylor, Landlord & Tenant, § 548, 2 Tiffany, Landlord & Tenant, §§ 240, 249. But be that as it may, the property here involved was, as between plaintiff's grantor and defendant, the latter's personal property, provided for his own convenience, with no intention of its being an improvement or a part of

the real estate. The defendant was in possession when plaintiff purchased and when the lease was made, hence plaintiff was chargeable with full notice of defendant's rights as tenant to remain until the following March, and also of his rights in the property upon the farm. As stated by Judge Cooley in Kerr v. Kingsbury, supra [p. 156], where the tenant Bennett was in possession when the mortgage to Kerr was given: "As to Bennett the buildings remained chattels, and it was the duty of Kerr to take notice of his rights. If he had done so and made the necessary inquiries, he would have ascertained that the buildings were personalty; for they could not be realty as to one interest and personalty as to another." That a purchaser of real estate is chargeable with notice of all the rights of a tenant in possession appears well settled. Wolf v. Zabel, 44 Minn. 90, 46 N. W. 81; Ecke v. Fetzer, 65 Wis. 55, 26 N. W. 266; Crooks v. Jenkins, 124 Iowa, 317, 100 N. W. 82, 104 Am. St. 326, and cases cited in note to Garbutt v. Mayo, 13 L.R.A.(N.S.) 97, 98. Therefore defendant's right to the property did not depend upon the truth of his father's testimony that plaintiff was fully informed when he purchased that the property in question belonged to the tenant, the defendant.

Our conclusion is that the order appealed from should be reversed and the case remanded for a new trial as to the first cause of action alone. So ordered.