# EDGAR GREENE v. W. MATHIOWETZ.[1]

March 6, 1942.

No. 33,088.

[1]Reported in 3 N. W. (2d) 97.

*Pfaender & Glotzbach* and *Streissguth & Gislason,* for appellant.
*Flor & Reim,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff was injured in an automobile collision. Having met with an adverse verdict in his action to recover damages, he appeals from an order denying his motion for new trial. The record discloses the usual controversy as to claims of defendant's negligence and plaintiff's contributory negligence.

The collision occurred about nine o'clock on the evening of February 18, 1938, at a right-angle intersection of Main and Grove streets in Sleepy Eye. The night was cold (below zero) but clear. The intersection was well lighted. There was no other traffic, and no distracting circumstances. One Hansen was driving defendant's car westerly on Main, a "through" street protected by stop signs. Plaintiff's car had become disabled a short distance from the intersection, and he was pushing it southerly on Grove street, using the left front door, which was open, as a means of propelling it with his left hand, at the same time guiding it with his right hand on the steering wheel. For defendant, the claims were that plaintiff entered the intersection without stopping or looking to see whether he could cross in safety; that plaintiff's car was not in sight until it suddenly appeared in the intersection; also that plaintiff had been drinking that afternoon and that this had so affected his mentality and his capacity to function normally as to lead to the view that his careless behavior was the cause, or at least a contributing cause, of the collision. Hansen's driving at moderate speed and keeping a vigilant lookout are stressed.

In a charge free from challenge at the trial the court fully instructed the jury as to the claims of the parties and gave the usual instructions in respect to applicable law, both as to defendant's claimed negligence and plaintiff's contributory negligence.

After giving the instructions, the court inquired, "Is there any-thing that I have omitted that counsel wishes to call my attention to?" Nothing was suggested, and not until plaintiff's motion for new trial was heard were any of the instructions claimed to be erroneous. That the verdict is adequately supported by the evidence is not questioned.

While several assignments of error are made here, plaintiff has conveniently grouped them under two headings. The first has to do with evidence concerning plaintiff's doings and experiences in the afternoon. The second relates to claimed errors in the instructions.

1. On the question of his impeachment, plaintiff quotes the familiar rule that as to matters collateral to the main issue, for the purpose of testing his credibility, he cannot be interrogated merely for the purpose of contradicting him. The reason for this rule is plain, since, if it were not enforced, the issues in many cases might be multiplied indefinitely so that the jury would be likely to lose sight of the real controversy. Jones, Evidence (4 ed.) p. 1530, § 827. Our cases are discussed and cited in 6 Dunnell, Dig. & Supp. § 10348.

2. The test to be applied to determine whether such matters are *collateral* to the issue is thus stated in Combs v. Winchester, 39 N. H. 13, 19, 75 Am. D. 203, 206:

"If the answer of the witness is a matter which you would be allowed on your part to prove in evidence; if it had such a connection with the issue that you would be allowed to give it in evidence, then it is a matter on which you may contradict him."

And the same thought is expressed in several of our cases, as, for example, Campbell v. Aarstad, 124 Minn. 284, 287, 144 N. W. 956, 958, where we said:

"The test of collaterality is: Would the cross-examining party be entitled to prove the fact as a part of his case tending to establish his cause of action or defense?"

To the same effect is State v. Jenkins, 171 Minn. 173, 175, 213 N. W. 923.

3. Counsel are not in disagreement as to the principles stated, but they do differ with respect to their applicability to the facts here presented. In our discussion of this phase a further recital of the evidence may be helpful.

While testifying in his own behalf, plaintiff's counsel asked him, "And on the evening of the 18th of February 1938, did you drive to Sleepy Eye in your car?" He answered, "I left New Ulm about—." At this point he was interrupted by his counsel, so the exact time of his departure was left uncertain. On cross-examination defendant brought out that plaintiff left New Ulm about 7:30 o'clock that evening, intending to visit a friend some four or five miles northwest of Sleepy Eye. Plaintiff denied having been at or near Sleepy Eye that day prior to 7:30 in the evening; denied that he had been at the farm of one Johnson between two and three o'clock that afternoon, or at any time, or that he had ever seen him; and denied that his car "was off the road and in a ditch" or that he had sought Johnson's help to get his car out of the ditch. (Johnson resided a short distance beyond the farm to which plaintiff said he was going.) Defendant called Mr. Johnson, who testified that plaintiff came to his farm home seeking aid to get his car out of a ditch where it was stalled. Johnson refused to help bring the car back on the road because he considered plaintiff so drunk as to be unfit to drive a car. Instead, he offered plaintiff something to eat and a bed on which to rest or sleep, the obvious purpose being to help him sober up. When recalled to the stand for rebuttal, plaintiff admitted that he had been on the Johnson farm during that afternoon, but tried to explain the discrepancy by saying that he thought it was the previous afternoon. Of course he denied that he was under the influence of intoxicating liquor. He does admit, however, that a passerby helped him get his car out of the ditch that afternoon. He claims that he stayed at the farm which he intended to visit that afternoon until about 7:30 in the evening.

On his way back to Sleepy Eye and near the place of accident he again ran into a road ditch. It was from this point that he walked to town to get help. With the assistance of two young men, who took their car there to help him, and the driver of a truck who happened along, plaintiff's car was finally removed from the ditch. The boys then used their car to push plaintiff's along the highway. Thus they proceeded until they reached the rise of a railroad grade, when they found that because of the slippery condition of the road their car lacked sufficient traction to go forward. Accordingly, they stopped, put on the brakes of their own car to hold plaintiff's car from sliding backward, then got out and pushed plaintiff's car over the incline, and left him in a position where he could, and did, make use of the downward slope by pushing his car, until he reached the point at or near which the collision with defendant's car occurred.

With these facts before us, the question, then, is whether the testimony of Johnson was admissible as to plaintiff's condition during the afternoon. Plaintiff earnestly contends that this was purely a collateral matter, since there was no testimony that he was under the influence of liquor when the collision occurred. It is said that defendant, by the mere "strategy of impeachment," brought into the case an issue "foreign" to the real issue. In addition, plaintiff also refers to the charge wherein the court said: "The defendant does not claim that he [plaintiff] was under the influence of liquor at the time of the accident."

We cannot say as a matter of law that at the time this evidence was elicited it was "foreign" to the issue of plaintiff's capacity properly to operate his car. The roads were slippery because of ice. From plaintiff's experiences that afternoon and evening, we think the jury could find that he was not fit to drive his car because of his drunken "hangover," and that his condition was in fact a contributing factor to the accident. After all, such a "hangover" does not so easily evaporate, and the triers of fact should not be deprived of considering it as an item of proof contributing to and explaining plaintiff's subsequent conduct. We do

not believe that the court erred in admitting the evidence. Since it was properly admissible when received, the fact that the court subsequently, by its instructions, withdrew it does not leave plaintiff in a position to complain. *Cf.* State v. Groene, 179 Minn. 187, 189, 228 N. W. 615.

4. The modern tendency is to admit evidence freely and "to give as wide a scope as possible to the investigation of facts." 2 Dunnell, Dig. & Supp. § 3251. For this reason, "courts should be slow to set up technical rules to exclude as evidence what would be accepted as relevant in the ordinary affairs of life." *Id.* Supp. § 3251. *Cf.* Mahowald v. Beckrich, 212 Minn. 78, 82, 2 N. W. (2d) 569. Therefore, if the evidence offered "conduces in any reasonable degree to establish the probability or improbability of the fact in controversy it should go to the jury." *Id.* Dig. & Supp. § 3251, and cases under note 52. Clearly, we think, "it was competent, on his [plaintiff's] cross-examination, to show *conduct* and statements of his own, inconsistent with his evidence on the stand, and, upon his denying it, to contradict him by way of impeachment." (Italics supplied.) Ladd v. Newell, 34 Minn. 107, 110, 24 N. W. 366. *Cf.* State v. Connelly, 57 Minn. 482, 59 N. W. 479. While alert and capable counsel here made a splendid effort to "rehabilitate" plaintiff's prior "inconsistent" testimony (State v. Taran, 176 Minn. 175, 181, 222 N. W. 906), the issue was still one of fact for the jury.

5. The claimed errors in instructions relate to (1) Mason St. 1940 Supp. § 2720-179, which provides: "No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law"; and (2) *Id.* § 2720-233, which forbids "any person to drive or for the owner to cause or knowingly permit to be driven on any highway any vehicle * * * which is in such unsafe condition as to endanger any person."

Immediately before reading these sections of the traffic act the court had read other sections thereof relating to the duties of the

driver of an automobile in respect to speed, lookout, crossing hazards, and the duties of drivers approaching crossings. All these stand without criticism; and, as we have seen, at the trial nothing was said about these two sections, criticized for the first time on the motion for new trial. Then and now, the only complaint is that these sections were "inapplicable" to the facts and "misleading." The bases for these criticisms are, chiefly, that the "slow speed" section was not intended to apply where the engine no longer functions; that the "statute might be applied to a car with a motor that is functioning improperly, cylinders missing, muffler explosions," and the like, but that where "the motor is absolutely dead the rules of a stalled car apply."

That plaintiff's car was proceeding at "slow speed" and, "so far as running is concerned," was "entirely unsafe until repaired" are conceded facts. If these facts could be found to enter into the chain of causation, these provisions, with propriety, could be read to the jury.

When plaintiff's motor became disabled so that it no longer could be started and the car could be moved only by other power, all well known to plaintiff before he entered the "through" highway, he was doing what these sections were designed to avoid. The snowbanks on opposite sides of the street had narrowed the driving space of the street to considerably less than its full width. All streets were slippery because of packed snow and ice. The jury could find that the means applied to propel plaintiff's car forward, whether by man power or by having it pushed or towed by another car, did not lessen plaintiff's duty of exercising ordinary care under the then existing circumstances. All these facts were in the case. And if counsel thought the reading of these statutes was harmful to plaintiff's cause, in fairness to the court and opposing counsel, attention should have been called thereto promptly to avoid error. A verbal error or unintentional misstatement of law or fact which could have been corrected at the trial had attention been called to it by counsel is not such error as requires reversal unless the erroneous instructions com-

178

plained of were "on some controlling proposition of law." Steinbauer v. Stone, 85 Minn. 274, 278, 88 N. W. 754, 755. Here, these statutes, as we read them, are not those of controlling propositions of law, but rather, if at all, merely such misstatements of fact or inaccuracies as are often likely to creep into a charge orally delivered to the jury. Steinbauer v. Stone, *supra;* Carlson v. Stork, 188 Minn. 204, 207, 246 N. W. 746; Harris v. Eggermont, 196 Minn. 469, 471, 472, 265 N. W. 322; Dehen v. Berning, 198 Minn. 522, 528, 529, 270 N. W. 602, 107 A. L. R. 1054.

The rule to be applied and the reasons for it are so well stated in Sassen v. Haegle, 125 Minn. 441, 444, 147 N. W. 445, 446, 52 L.R.A.(N.S.) 1176, that a quotation here is not deemed amiss:

*"Inaccuracy in expression, failure to instruct on every possible hypothesis, or inadequate treatment of some phase of the law applicable to the controversy* does not, as a rule, entitle a party to take advantage thereof upon the motion for a new trial where, had the shortcoming in the charge been called to the attention of the court by an exception or suggestion before the jury retired, we might readily assume that the court would have promptly corrected the inadvertence. [Citing cases.] But *we think the statute,* \* \* \* *was designed to prevent a miscarriage of justice, and to that end allows counsel* an opportunity *to urge* on a motion for a new trial a *fundamental error* in the charge although, *when* it was given, *neither he nor the court perceived the mistake."* (Citing cases.)    (Italics supplied.)

Order affirmed.

LORING, JUSTICE (dissenting).

With all respect for my colleagues' views on the subject of "hangovers," I cannot concur in the view that the evidence of intoxication some five hours before the accident was admissible when it was conceded that plaintiff was sober not only at the time of the accident, but had been exposed to the open air for an extended period in the interim. I cannot see that the evidence comes within the rule stated in State v. Jenkins, 171 Minn. 173,

213 N. W. 923. It would be equally pertinent and not so prejudicial, it seems, to show that plaintiff was afflicted with dyspepsia or similar ailment. The prejudice of the showing of intoxication is obvious.

Even more serious is the reading of Mason St. 1940 Supp. §§ 2720-179 and 2720-233, in the charge. It is true that counsel did not object to this at the time the charge was given, but in Sassen v. Haegle, 125 Minn. 441, 444, 147 N. W. 445, 446, 52 L.R.A.(N.S.) 1176, this court, speaking through Mr. Justice Holt, said:

"But we think the statute, section 7830, G. S. 1913 [now Mason St. 1927, § 9327], was designed to prevent a miscarriage of justice, and to that end allows counsel an opportunity to urge on a motion for a new trial a fundamental error in the charge although, when it was given, neither he nor the court perceived the mistake."

This was not an inadvertence within the rule of Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754, but a deliberate reading of a statute which to me appears wholly inapplicable.

It seems obvious that § 2720-233 relates to the *driving* of a car without adequate brakes, lights, or with similar equipment-defects which render it a menace to other traffic. It cannot apply to a car which merely has a dead engine and is being pushed or hauled along the highway to a filling station or repair shop. Could it be said that the statute applies to a disabled car being hauled by a team, or to other "devices" (§ 2720-151[1]) which are being moved by human power? I think not. The *sine qua non* of application is the *driving* of an automobile in unsafe condition. Section 2720-179 seems equally inapplicable to such a vehicle. Obviously, a vehicle being hauled or pushed along the highway cannot proceed at the speed of normal motor traffic. If applicable, the section was enforceable in the manner provided in the second paragraph, *viz.*, if plaintiff failed to increase his speed upon request by an officer, he would have committed a misdemeanor.

I think there should be a new trial.

HILTON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Loring.

STONE, JUSTICE (dissenting).

I think it was error to submit to the jury the two statutes, §§ 2720-179 and 2720-233, and that it was so "fundamental" as not to be within the rule of Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754. I can see no error in admission of the evidence of intoxication.