H. P. DROHER AND SONS v. VICTOR TOUSHIN
AND ANOTHER.
ANCHOR CASUALTY COMPANY, THIRD-PARTY DEFENDANT.

85 N. W. (2d) 273.

October 4, 1957—No. 36,866.

*Hoffmann, Donahue & Graff* and *T. Eugene Thompson,* for appellants.

*Linn J. Firestone* and *Firestone & Firestone,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from an order of the court denying a motion of plaintiff and third-party defendant for amended findings or a new trial.

In 1952, defendants, who are husband and wife, acquired a tract of land in St. Paul for $5,500. They hired one James H. Speckmann to prepare plans and specifications for a single-family residence on this land. Speckmann was not a registered architect or engineer but had considerable practical experience in preparing plans and specifications for houses of this type. Thereafter a contract was let to plaintiff, a corporation with offices in St. Paul, for the construction of the house according to the plans and specifications prepared by Speck-

mann. The original contract price was $41,000, which later was raised to $43,996.52 as a result of changes made during the course of construction. Among other things, the contract contained the following provisions:

"1. Contractor agrees to erect upon said lot a home for the owners in accordance with the plans, specifications and working drawings prepared by James H. Speckman, 802 St. Paul Building, St. Paul, Minnesota, which plans and specifications are dated May 28, 1952 and bear the number 5209, and to that end will provide all materials and all labor necessary to complete said structure in accordance with said plans, specifications and working drawings, and Contractor further agrees to do everything required by the general conditions set forth in the specifications and plans, and to perform all of said work in a first class workmanlike manner. Contractor further agrees that the work under this contract will be started as soon as possible and practicable; that the work will be prosecuted diligently to completion without any delay on the part of the contractor; and that the work will be substantially completed on June 1, 1953.

\* \* \* \* \*

"6. The parties agree that the plans and specifications hereinbefore referred to are a part of this contract the same as if incorporated at length herein."

The specifications, among other things, provided:

"1. GENERAL CONDITIONS OF THE CONTRACT

\* \* \* \* \*

"Unless otherwise specified, all materials shall be new and all workmanship shall be of the first best quality.

\* \* \* \* \*

"The Contractor shall provide and maintain protection of all of his work from damage and shall protect the Owner's property from injury or loss during the execution of the Contract. \* \* \*

\* \* \* \* \*

"2. GRADING:

"(A) On all sides of the building, the Contractor shall bring the finish grades to the lines shown on the drawings. All finish grades

shall slope away from the building to the natural grades, the topsoil being used for this purpose.

\* \* \* \* \*

"13. CARPENTER WORK:

"(A) The Contractor shall provide all necessary labor and materials and perform all carpenter work of every nature whatsoever to be done. He shall lay out all work and be responsible for all measurements, and keep a competent foreman in charge at all times. All work shall be done in a first-class workmanlike manner, level, straight, plumb, and true, and in strict accordance with plans and specifications. Any discrepancies or errors that may be found on the plans, or in the specifications, shall be reported immediately to the Owner or Architect for correction. Under no circumstances shall an advantage be taken of said discrepancies or errors.

\* \* \* \* \*

"24. EXTRAS OR CREDITS:

"(A) Any deviation from these specifications or plans involving an extra charge or credit must be agreed to in writing between the contracting parties before the change is made. The Contractor shall not take advantage of any discrepancies found. If any discrepancies are found they shall be referred to the Owner or Architect for correction immediately and in no case shall the Contractor proceed in doubt."

During the course of construction, defendants paid plaintiff the sum of $38,738.58 to apply upon the contract, leaving a balance of $5,257.94. During the course of the trial, certain adjustments were conceded so that plaintiff contends that the actual balance due under the contract is $5,197.94.

Construction on the house was commenced on January 8, 1953. On January 12, 1953, plaintiff, as principal, and third-party defendant, Anchor Casualty Company, as surety, executed a construction bond with the usual conditions guaranteeing the performance of the contract according to its terms.

The house was so far completed that defendants were able to move into it on June 23, 1953. Defendant Victor Toushin, for a number of years, has acquired a great deal of model railroad equipment. As a hobby he has built much additional equipment, all according to scale.

This equipment was moved into the basement of the house a few days prior to occupancy thereof by defendants, and much of it, packed in paper cartons, was left on the floor of the basement or on tables. During the night of June 23 and the morning of June 24, there occurred a heavy rainstorm. A great deal of water entered the basement, apparently through two windows which had been left partly open, causing a flooding of the floor to a depth of from four to six inches. As a result, much of the model railroad equipment was ruined beyond repair or was so damaged that it is of little value. The record does not disclose whether plaintiff or defendants were responsible for leaving the windows open.

Plaintiff commenced this action to recover the balance due on the contract. Defendants claim that the house was not constructed properly according to the plans and specifications under which the contract was let to plaintiff. One of their main claims is that a steel post in the basement, which supports a beam on which the floor joists rest, was too low and that as a result there was a deflection in the level of the floor and that other parts of the house, including the roof, following this same deflection, sagged noticeably. They contend also that the yard was not graded to the proper slope, as a result of which the water ran into the basement causing much damage to the model railroad equipment.

The case was tried to the court without a jury. The court awarded damages to defendants on their counterclaim in the sum of $20,000 for failure to construct the house properly and $2,000 for damage to the model railroad equipment. Offset against this allowance was the sum of $5,075.94, which the court found was due on the contract, leaving a balance due defendants on their counterclaim of $16,924.06.

The questions presented here are: (1) Does the evidence sufficiently support the court's finding that damage to the model railroad equipment was due to plaintiff's negligent failure to grade the yard to the proper slope according to the contract? (2) Does the evidence support the court's finding that the house was improperly constructed? (3) Was the proper measure of damages applied? (4) Does the evidence sustain the amount of damages awarded to defendants?

■ The first issue presents only a question of fact. It is defendants'

claim that the grading of the yard was not done according to the plans and specifications. The plans call for grading in such a manner that drainage of surface water would be away from the house. There is ample evidence that on June 23, 1953, when the water damage occurred, surface water drained toward the house rather than away from it. It would be useless to recite in detail the evidence on this issue. It is enough to say that the evidence is conflicting as to whether plaintiff had graded according to the plans or not and that the court accepted the evidence supporting defendants' claim. We have carefully examined the record and are convinced that the evidence sufficiently supports the court's finding on this issue. It is conceded by everyone that a great deal of water did enter the basement. It could hardly have entered in such quantity unless the drainage was such as to cause surface water to flow toward the house. The record fails to establish who left the windows in the basement open, but, even if we assume that defendants did so, it still is apparent that little damage would have been done on that account unless substantial quantities of water flowed toward the house. Under all the circumstances, it was for the trier of fact to determine who was responsible for this damage.

■ On the issue of faulty construction, the case also presents only questions of fact. Plaintiff contends that, if there was anything wrong with the construction, it was due to the insufficiency, as well as deficiency, of the plans and specifications. It is plaintiff's claim that the home was constructed according to the plans and specifications and that it is not responsible for defects due to faulty plans as long as the house was constructed according to the plans. Plaintiff relies, for the most part, on Friederick v. County of Redwood, 153 Minn. 450, 190 N. W. 801.[1]

The difficulty with plaintiff's position is that the evidence is conflicting as to whether plaintiff did construct the house according to the plans and specifications. There is no doubt that the floor of the house was not level. Various devices were used in an effort to remedy the condition. Plaintiff placed a filler on the floor in an attempt to raise the low side so as to make it level prior to carpeting. This effort was not

---

[1]See, 21 Minn. L. Rev. 70.

successful, and it was finally necessary to build up one side of furniture and beds in order to have them stand level.

The principal point of difference between the parties was what caused a steel pole in the basement, which acted as a support for a beam on which the floor joists rested, to be lower than it should have been. Plaintiff contended that the pole was put in level but that the footing on which it rested, which was built according to the plans and specifications, was insufficient to hold it and that it settled after being put into place. This pole was placed on a concrete footing 2 feet square and 1 foot thick. Fred D. Wright, chief building inspector for the city of St. Paul, testified that the footing met the requirements of the building code in St. Paul and that footings smaller than were used here are often used in houses of similar size. Other witnesses likewise testified to the sufficiency of the footing. Even the testimony of plaintiff's witness, Sydney L. Stolte, is subject to some doubt, as it appears that other posts supporting greater weight did not sink but were sufficient to hold the load placed upon them. It seems that plaintiff's main argument is based on the premise that the court should have accepted the testimony of plaintiff's witness Stolte and disregarded that of several of defendants' witnesses. Of course, the credibility of the witnesses was for the trial court. There is nothing so inherently improbable in the testimony of defendants' witnesses as to require the court to disregard it.

In addition to the question of whether the steel post was responsible for most of the damage, defendants claim that plaintiff failed to put in certain knee walls and collar ties which help to support the roof. Plaintiff claims that the plans and specifications did not require such supports. Defendants claim that good workmanlike carpentry requires the installation of such braces without having them shown in the plans and specifications. In this they are supported by the testimony of several witnesses including two disinterested contractors, one of whom had spent many years building houses of a similar nature. There is testimony that it is up to the builder to construct adequate supports for the roof and that, if the builder feels that the job is a complicated one, it is up to him to call the designer for help. Fred D. Wright testified that in his opinion the plans and specifications were adequate for

building a house of this kind. Speckmann, who drew the plans, testified that such matters as collar ties and knee walls are usually not included in the plans and specifications for houses of this type but that good workmanlike carpentry requires such bracing without having it shown in the plans and specifications. There is other supporting evidence.

The facts in Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688, are similar in many respects to those now before us. In that case we said (219 Minn. 603, 18 N. W. [2d] 694):

"* * * the trial court's findings of defects and resulting damage to defendants must be sustained under the familiar rule that findings having reasonable support in the evidence, even though it is conflicting, will not be disturbed on appeal. Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312. Whether a contractor has substantially performed and the amount of damages occasioned by omissions and defects are fact questions."

The same is true here. Whether the plans and specifications were adequate; whether the house was built according to the plans and specifications; and whether the work was done in a workmanlike manner, as required by the contract, are all questions of fact for the trial court's determination. The evidence here amply sustains the court's finding that the house was not built in a workmanlike manner. It is apparent that the defects are of a substantial nature.

■ The question as to the proper measure of damages presents a more troublesome issue. Our decisions on the subject are not too clear.[2] In Snider v. Peters Home Bldg. Co. 139 Minn. 413, 415, 167 N. W. 108, 109, we said:

"It is the law of this state that the builder who has in good faith substantially performed, though there are minor defects, if they are of a character which may be so remedied that the owner will have that for which he contracted, may recover on the contract the agreed price less such sum as will cure the defects. * * * The rule which permits a recovery of the contract price with appropriate deductions is applicable

---

[2]In addition to the cases discussed, see Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445, 52 L. R. A. (N. S.) 1176.

only when there has been a good-faith effort to perform and the defects are capable of reasonable remedy so that the owner when they are remedied will have that for which he contracted."

In Carl Lindquist & Carlson, Inc. v. Johanson, 182 Minn. 529, 531, 235 N. W. 267, 268, we recognized the following instruction to the jury as the correct rule:

"From the value of the property as it would have been had the work been done in a workmanlike manner and without negligence, you deduct the value of the property in the condition in which it was when the work was completed. The difference is the measure of damages, if any, which you are to allow, which you would allow."

In Groves v. John Wunder Co. 205 Minn. 163, 286 N. W. 235, 123 A. L. R. 502, we held that, in a case where there was a complete failure of any attempt to perform a contract, the correct measure of damages was the cost of performing the contract and not the difference in value. This decision was by a divided court, three members of the court concurring in the opinion, two dissenting, and two took no part. The majority opinion is based, at least in part, on the fact that the breach of the contract was wilful and in bad faith.[3]

In Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688, we applied the difference-in-value rule to one item where a defect could not be easily remedied and the cost of performance as to other items which could be remedied, without any discussion of the proper measure of damages.

The applicable rule is to be found in Restatement, Contracts, § 346, as follows:

"(1)   For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

"(a)   For defective or unfinished construction he can get judgment for either

"(i)   the reasonable cost of construction and completion in ac-

---

[3]See, Annotation, 123 A. L. R. 519.

cordance with the contract, if this is possible and does not involve unreasonable economic waste; or

"(ii)   the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste."

In 9 Am. Jur., Building and Construction Contracts, § 152, we find the rule stated thus:

"The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case. In a majority of jurisdictions, where the defects are such that they may be remedied without the destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract. But where, in order to conform the work to the contract requirements, a substantial part of what has been done must be undone, and the contractor has acted in good faith, or the owner has taken possession, the latter is not permitted to recover the cost of making the change, but may recover the difference in value."

It would seem that the better rule and the one followed by a majority of the courts[4] is that, where there is a substantial good-faith effort to perform the contract but there are defects of such a nature that the contract has not been performed according to its terms, which defects can be remedied without the destruction of a substantial part of the building, the owner is entitled to recover the cost of making the work conform to the contract but, where it appears that the cost of remedying the defects is grossly disproportionate to the benefits to be derived therefrom, the owner is entitled to recover the difference between the value of the property as it would have been if the contract had been performed according to its terms and the value in its condition as constructed. Cases such as we have here, where the evidence

---

[4]See, Annotation, 123 A. L. R. 520.

establishes a substantial good-faith performance, are to be distinguished from those where there has been a wilful failure to perform at all, such as we had in Groves v. John Wunder Co. 205 Minn. 163, 286 N. W. 235, 123 A. L. R. 502.

It follows that the evidence of the cost of performance under this rule is admissible for the purpose of determining whether the cost of such performance would be grossly disproportionate to the results to be obtained. The applicable rule depends upon a finding of fact on this issue by the trial court.

The trial court, in a preliminary statement at the close of the case, indicated some doubt as to the measure of damages to be applied. The court said:

"* * * On the question of damages * * * the measure of damages is the difference between what had been bargained for and what was received, that is a pretty difficult thing; and all that we can expect of jurors or of judges when they are the trier of the facts is that they come to some conclusion that is based upon some reasonable estimate and I feel that the defendants' witnesses here were honest and reasonable in their estimates. Nobody knows whether $20,000 is too much or too little, but it is about the best these people can do so I am adopting that figure, $20,000, on that counterclaim."

In the findings, however, it is clear that the court applied the difference-in-value theory. After finding a breach of the contract, the court's findings are:

"* * * that had the house been erected as provided in said agreement, that it would have been reasonably worth the sum of Fifty thousand ($50,000.00) Dollars, exclusive of land, and that the home as constructed by the plaintiff is reasonably worth the sum of Thirty thousand ($30,000.00) Dollars, exclusive of land, and that by reason thereof the defendants have been damaged by plaintiff's failure to perform said contract in the sum of twenty thousand ($20,000.00) Dollars."

In view of the extensive damage which would have occurred as a result of any effort to correct the defects in this house, it was proper to apply the difference-in-value theory in assessing damages.

■ Finally, plaintiff contends that the evidence does not sustain the court's findings as to damages awarded for failure to properly construct the house. Defendant Victor Toushin testified that, if the house had been constructed according to the plans and specifications in a good and workmanlike manner, the property would have been worth $65,000 to $68,000; that as it was constructed it was worth $48,000. The court found that it would have been worth $50,000 had it been properly constructed and was worth $30,000 as constructed. In applying the difference-in-value measure of damages, the opinion of Victor Toushin is the only evidence in the case on the issue of damages. While the owner of property is competent to express his opinion as to the value of his property,[5] it does seem that in this case such opinion, standing alone, is of little probative value. No foundation was laid to show that Toushin was familiar with the market value of real estate of this kind.

Plaintiff relies largely on Young v. Barelli, 169 La. 319, 125 So. 258. But there is a very substantial difference between that case and the one before us, even if the law in Louisiana could be applied in our state. In that case, expert witnesses were called on both sides, and the question was largely one of which witnesses were entitled to belief. The Louisiana court said (169 La. 327, 125 So. 261):

"The owner employed two experts to examine the building and estimate the cost of remedying the alleged defects and completing the work. The contractor and his surety employed one expert for the same purpose. The three experts testified on behalf of their respective employers, and their estimates of the cost of remedying the defects differ so widely that there is no possibility of reconciling them. The court must therefore accept as correct either the estimates of the owner's experts or the estimate of the expert for the contractor and his surety."

Here, plaintiff chose to sit silent and presented no evidence at all on the issue of damages. Under these circumstances, the trial court was left in the unenviable position of having to make a finding of fact on an issue on which the evidence, at the best, was of little proba-

---

[5]Carl Lindquist & Carlson, Inc. v. Johanson, 182 Minn. 529, 235 N. W. 267; Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688.

tive value. It seems almost incredible that this house, which defendants were willing to accept and live in with full knowledge of the defects which existed, could have been depreciated in value by virtue of these defects in an amount equal to almost half the cost of construction. We feel that to allow this result to stand on the evidence before us would be a miscarriage of justice. It might be that, on a new trial of this issue, competent evidence will establish that the result is justified, but on the evidence on which the finding rests it seems so improbable that the property could have been depreciated in value to the extent of the amount allowed that we are unwilling to let it stand.

On the cost of repair, James H. Speckmann, Severt Eric Olson, Robert W. Johnson, and Henry A. Anderson all testified that, in order to correct the defects existing in the house so as to make it plumb, level, and straight as it should have been built, it would be necessary to jack up the low beam in the basement in the center of the house and that the result of so doing would cause the plaster to crack, parts of the house would have to be rebuilt, and the whole job would require a great deal of work and expense and that in their opinion it would cost in excess of $20,000 to repair the damage. Olson, who is a builder of many years' experience, testified that he would not take the job on a contract for $20,000. The very fact that it would cost so much and require a great deal of the house to be rebuilt in order to remedy the defects furnishes the basis for applying the difference in value as the measure of damages. It seems to us that Victor Toushin's opinion on the difference in value has been tailored to correspond with the evidence of these witnesses on the cost of repairing the defects and that the ultimate result is that the proper measure of damages has not been supported by any evidence at all of any probative value. Under these circumstances, it is our opinion that a new trial should be granted on the issue of damages for failure to properly construct the house. At the same time, the trial court was left with no choice because of the failure of plaintiff to introduce any evidence on this issue. Ordinarily, when a litigant is willing to gamble on the outcome of a lawsuit and sit silent when he has an opportunity to present evidence, he should be bound by the result, whatever it may be. However, in this case, the evidence of Victor Toushin is also so unsatis-

factory that we are reluctant to apply the usual rule. However, we do feel that it would be unconscionable under these circumstances to saddle defendants with the costs and disbursements of this appeal on the theory that plaintiff is the prevailing party. Under our statutes and case law, we have no authority to deny plaintiff its disbursements if we grant a new trial on any issue. In view thereof and in view of the fact that we believe the result is due solely to plaintiff's failure to introduce any evidence on this issue, a new trial will be granted on the issue of damages for failure to construct the house in a workmanlike manner according to the plans and specifications only if plaintiff will file with the clerk of this court, within ten days from the date of the issuance of this opinion, its consent in writing to waive taxation of all costs and disbursements on this appeal; otherwise the case shall stand affirmed on all issues.

With respect to the amount awarded for damages to the model railroad equipment, the only evidence on this issue again is the opinion of Victor Toushin. He testified that the equipment damaged or destroyed was worth $4,500. The trial court arbitrarily reduced this amount to $2,000. Plaintiff introduced no evidence, nor has it argued the question as to damages to this property in its brief or otherwise. Consequently, it must be held that it has waived any exception to that item of damages. On this issue and on all other issues in the case, there shall be an affirmance.

FRANK T. GALLAGHER, JUSTICE (concurring specially).

While I agree that no foundation was laid to show that Mr. Toushin was familiar with the market value of real estate of the kind involved here, I cannot agree with the majority that it would seem that his opinion on the difference in value had been tailored to correspond with the evidence of witnesses Speckmann, Olson, Johnson, and Anderson with reference to the cost of repairing the damages to the house. As stated by the majority, the rule is that the owner of property is competent to express his opinion as to the value of his property. All that Mr. Toushin did was to testify that in his opinion the house would be worth $65,000 to $68,000 if it had been constructed according to the plans and specifications in a good and workmanlike manner and that it is worth $48,000 as it was constructed. Witnesses Speckmann,

Olson, Johnson, and Anderson, testifying as to what would be necessary to repair the house, all said that it would cost in excess of $20,000 to repair the damages. In fact, Mr. Olson, a building contractor with many years experience, said that he would not take the job of repairing the house for $20,000. It would, therefore, seem to me that the testimony of those witnesses as to the cost of repairing the house corroborated Mr. Toushin's opinion as to how much less he thought the house would be worth than that his testimony was tailored to correspond with that of the repairmen and experienced builders referred to above.

I otherwise concur specially in the results.