SAMUEL D. PETERSON v. WESTERN UNION TELEGRAPH
COMPANY.

72 41
s75 371

April 22, 1898.

Nos. 11,109—(47).

**Libel—Transmission by Telegraph—Publication.**
A written message, alleged to be libelous, was delivered to defendant's operator at New Ulm, and by him transmitted by sound over the wires to the operator at St. Paul, to be by him reduced to writing and delivered to the plaintiff. *Held,* that this constituted a publication of the libel.

**Same—Negligence—Exemplary Damages—Charge to Jury.**
Mere negligence, unless so gross as to amount to positive bad faith, is not a ground for awarding punitive damages. Hence an instruction to the effect that the jury might award exemplary damages, if they found that the defendant was negligent in employing the operator who transmitted the message, or in failing to adopt proper rules to prevent the transmission of libelous messages, is erroneous.

Appeal by defendant from an order of the district court for Brown county, Webber, J., denying its motion for a new trial after a verdict for $1,800 in favor of plaintiff. Reversed.

*Ferguson & Kneeland,* for appellant.
The broad distinction between slander and libel is that slander is the communication of defamatory matter by transitory means, like the human voice, while libel is the communication of defamatory matter by means more or less permanent, as written language, pictures and caricatures. In this case transmission of the message by telegraph over the Western Union line was wholly by sound. To the receiving operator the clicking of the instrument is a voice, intelligible like human speech. It is absolutely the same as if the message were spoken into his ear over a telephone wire. It is by his sense of hearing and not of sight that he learns the words of the message. The written message he never sees. So that if the communication to him by his fellow operator is a publication, the nature of the publication is such as to make it slander and not libel. Townshend, S. & L. §§ 18, 98, 99, 103, 108; Cooley, Torts, 193; Odger, L. & S. 22.

It follows that the plaintiff has no cause of action because: (1) The words complained of are not actionable unless published in writing. Newell, S. & L. 84; Odger, L. & S. 2; Townshend, S. & L. § 153a; Richmond v. Post, 69 Minn. 457; and (2) a corporation cannot be liable for slander. Townshend, S. & L. § 265; Odger, L. & S. 368; Newell, S. & L. 361; Gilbert v. Crystal, 80 Ga.. 284; Behre v. National, 100 Ga. 213; 2 Morawetz, Priv. Corp. § 727.

Furthermore such a publication, if it is a publication, is privileged in the absence of express malice. A telegraph company is bound by the common law, as well as by statute, to transmit all lawful messages. It can refuse only at its peril. If it makes a mistake in refusing to transmit a message on the ground that it is unlawful, the company is liable in damages. Gray v. Western, 87 Ga. 350; Western v. Ferguson, 57 Ind. 495; G. S. 1894, § 2635; Primrose v. Western, 154 U. S. 1. The transmission of this message was prima facie privileged. It was privileged unless actually malicious. The publication fairly made by a person in the discharge of some public or private duty, whether legal or moral, comes within the class of privileged communications. Toogood v. Spyring, 1 C. M. & R. 181; Marks v. Baker, 28 Minn. 162; Moore v. Butler, 48 N. H. 161; Aldrich v. Press, 9 Minn. 123 (133); Simmons v. Holster, 13 Minn. 232 (249).

The question of actual malice and punitive damages should not have been submitted to the jury. Even if in sending the telegram the operator, although not legally excusable, was acting under a mistaken sense of duty, the case is at most one only for compensatory and not for vindictive damages. Wiggin v. Coffin, 3 Story, 1. Punitive damages are not to be inflicted except for actual malice. Hoffman v. Northern, 45 Minn. 53. And the malice of agent is not imputable to principal. Eviston v. Cramer,. 57 Wis. 570; Wardrobe v. California, 7 Cal. 118; Hill v. New Orleans, 11 La. An. 292; Detroit v. McArthur, 16 Mich. 447; Sedgwick, Dam. § 523.

*S. L. Pierce,* for respondent.

MITCHELL, J.

This case was here on a former appeal (65 Minn. 18, 67 N. W.

646), the opinion in which may be referred to for a full statement of the facts. It was there held that the forwarding of the alleged libelous message by the defendant over its wires to its operator at St. Paul constituted a publication; that the message was on its face fairly susceptible of a libelous meaning; also that the evidence was sufficient to justify the jury in finding that defendant's operator published or transmitted the message maliciously, and not in good faith. If there is any difference between the evidence on this last point on the first trial and that adduced on the last trial, the latter is the stronger against the defendant.

The message was delivered in writing to the operator at New Ulm, and by him transmitted over the wires to the operator at St. Paul, to be by him reduced to writing and delivered to the plaintiff, which was done. The fact affirmatively appears on the second trial that the message was transmitted over the wires by sound, and the point is now made that the mode of communication was oral, and not written, and therefore there was no publication of a libel; the distinction between slander and libel being that the former is oral defamation by spoken words, while the latter consists of a publication by writing, printing, pictures, or other durable mode. The alleged materiality of the point lies in the facts that, as defendant claims, the words complained of are not actionable in themselves unless published in writing, and that a corporation cannot be liable for slander.

This point was not raised or considered on the former appeal. We are of the opinion that it is without merit. Whether the means employed by the operator at New Ulm in dictating or communicating the contents of the message to the operator in St. Paul consisted of sounds representing letters, or dots or dashes representing the same thing, can make no difference. In either case, the purpose and result would be the same, viz. the transmission and copying in written form the contents of the written message in the hands of the operator in New Ulm. The result was to put the message in the hands of the St. Paul operator in written, durable form, which he could read and understand as effectually as if the original had been placed in his possession. Words communicated for such an accomplished purpose "have an existence per se off the tongue."

When the means of reproducing the contents of a writing are by repeating its contents orally to another, to enable him to put it into writing, and the person to whom it is repeated reduces it to writing, the writing thus produced does not depend for its identification on the oral utterances of the person who reads or repeats, but on the writing itself, which is thus communicated to the person who reduces it to writing; and it can make no difference whether the contents of the writing are communicated by sound over telegraph wires by one operator to another or by a person in audible words to an amanuensis at his side. See Pullman v. Hill [1891] 1 Q. B. Div. 524; McCoombs v. Tuttle, 5 Blackf. 431; Adams v. Lawson, 17 Grat. 250. As long ago as Lamb's Case, 9 Coke, 59a, it was held that where one knowing a writing to be a libel "reads it to others that is an unlawful publication of it"; and in "The Case De Libellis Famosis," 5 Coke, 124b, it was held that a "libel may be published (1) verbis aut cantilenis, as where it is maliciously repeated or sung in the presence of others." It is not necessary to go as far as this in order to hold that the facts in the present case constituted the publication of a libel.

2. There was no evidence that the New Ulm operator was not competent and generally faithful in the discharge of his duties, or that he was ever guilty of any breach of duty, unless in the transmission of this message, and there is no evidence that the defendant had any reason, prior to its transmission, to anticipate that he would transmit an improper message. Neither is there any evidence that the defendant ratified or approved of his wrongful act (if it was such) in transmitting this message, unless it is the bare fact that it subsequently retained him in its service.

Upon this state of the evidence the court, after instructing the jury that if they found that the defendant or its agent was actuated by malice in fact, and that it ought to be punished, further instructed them in that connection as follows:

"Perhaps the only fault that can be charged against the defendant in the premises is that it had and retained an operator who would receive and transmit such improper messages, or that it did not have a rule prohibiting the sending of unsigned messages libelous upon their face; and, if the jury should be of that opinion, they

should make the amount of exemplary damages, if any, reasonably proportionate to the degree of the defendant's fault."

It should be stated in this connection that the defendant had a rule forbidding its operators from sending messages containing profane or obscene language, but none in regard to unsigned or libelous messages. When the court had completed his charge, defendant's counsel took the following exceptions:

"I except to that portion of the general charge which submits the question of punitive damages to the jury; and I especially except to that portion of the charge reading substantially as follows: [The part above quoted.]"

Then ensued the following colloquy between counsel, and between the counsel and the court:

"Mr. Pierce: If there is an exception to that part of the charge, I would consent to strike that portion of the charge out. Let's get that,—that it might be possibly construed to be a recognition of the fact of fault, I suppose that is the point counsel makes. I just as soon, if they object to do it, to have that clause stricken out. Mr. Ferguson: I have referred to that. If that is stricken out, why, then, the case should be dismissed, because there isn't any other fault of the company. Mr. Pierce: I think, perhaps, that clause might be stricken out. Mr. Ferguson: I except to it. If you want to strike it out, I move to dismiss. By the Court: I guess I won't strike it out. Mr. Ferguson: That is the gist of your action; that is why I except to it. Mr. Pierce: Now, I will ask counsel, then, the particular feature of that— What is it that you object to? Object to the question of submitting the question of punitive damages at all, under the evidence of this case? Mr. Ferguson: I except to this, which is the only specific point called out. I don't think that the question of punitive damages should be submitted to the jury. Mr. Pierce: I might say that it might be modified, with the suggestion that, if these facts might be found, it is rather a matter for the jury to determine. By the Court: I don't feel disposed to change that at present."

We are of the opinion that the part of the charge especially excepted to contains material error. It may be that it is erroneous in assuming or implying that the defendant was at fault or negligent in each and all of the matters mentioned. But that is not its chief vice. The fatal error in this part of the charge lies in the fact that, in effect and substance, it amounts to an instruction that the mere

negligence of the defendant in the respects mentioned would justify the jury in awarding punitive or exemplary damages. The defendant's liability, if any, rests upon the doctrine of respondeat superior. If the act of the servant in transmitting the message was wrongful, the defendant is liable, whether it was negligent or not; and, on the other hand, if his act was lawful, the defendant is not liable, however negligent it may have been. Hence the question of defendant's negligence in the employment of its operator, or in the failure to adopt proper rules, was really foreign to the issues in the case.

Moreover, mere negligence, unless so gross as to amount to positive bad faith, is no ground for awarding punitive damages. The liability of the defendant for such damages, if the act of the agent was actuated by malice or bad faith, is an entirely different matter. It is urged very strenuously by plaintiff's counsel that defendant is not in position to raise this objection, for the reason that, by what subsequently occurred in court, he put his exception to the charge exclusively upon the ground that the question of exemplary damages should not have been submitted to the jury at all, and that he did not specifically call the court's attention to the particular vice in this part of the charge. We cannot so construe the colloquy between the court and defendant's counsel.

Counsel took two entirely distinct exceptions: First, to the submission of the question of exemplary damages to the jury at all; and, second, to the part of the charge which stated the grounds upon which the jury might award such damages; and we cannot see anything in what followed that amounted to a waiver of either of the exceptions or a merger of the second in the first. The second exception was sufficiently explicit. Counsel called the court's attention specifically to the particular part of the charge excepted to, embodying it verbatim in his exception. We do not think he was required, under the circumstances, to go further, and explain to the court the reasons why the charge was erroneous. The error in it was not one of mere verbal inaccuracy or incompleteness of statement. As it appears that this case has been tried three times, it is unfortunate that error should have occurred on the trial, but the error is so manifest and so substantial that we cannot avoid grant-

ing a new trial. This renders it unnecessary to consider any of the other points discussed by counsel.

Order reversed.