## MILO NASH v. CHESTER CHRISTENSON AND OTHERS. IRVING STRASSBURG AND ANOTHER, RESPONDENTS.[1]

February 5, 1954.

No. 36,121.

<hr>

[1]Reported in 62 N. W. (2d) 800.

*Field, Arvesen & Donoho* and *H. W. Swenson,* for appellants.
*Johanson, Winter & Lundquist,* for respondent Nash.
*Rosengren & Rufer,* for respondent Irving Strassburg.
*Carroll & Thorson,* for respondent Clifford Strassburg.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying the motion of defendants Chester Christenson and Peter Hammer, a sole trader doing business under the name and style of Hammer Motor Sales, for an order vacating and setting aside the verdict of the jury and granting a new trial.

This is an action by Milo Nash against Chester Christenson, Peter Hammer, Irving Strassburg, and Clifford Strassburg to recover for personal injuries and property damage resulting from an automobile collision which occurred on April 18, 1951, between 6 and 7 p. m. at a point about three and one-half or four and one-half miles south of the city of Madison, Minnesota, on U. S. highway No. 75. This highway runs in a north-south direction, is paved with cement, and is 20 feet wide. On each side of the pavement is a hard, usable shoulder seven or eight feet wide. There is nothing to obstruct the view on the highway for a distance of about half a mile on each side of the place where the accident occurred. At a point one-half mile south of the scene of the accident, U. S. highway No. 75 intersects U. S. highway No. 212, which runs east and west. At a point one-half mile north of the place of the accident, the highway goes over a small knoll, but south of the crest of this knoll the highway is straight and has a slight gradual decline. From this crest there is a clear view down to and beyond the scene of the accident to the intersection of No. 75 with No. 212. At the time of the happening of the accident it was daylight, the visibility was good, and the pavement was dry.

Immediately preceding the impact, Clifford Strassburg was driving a piece of heavy road machinery, referred to as a motor grader, at a speed of about 15 miles per hour in a southerly direction on U. S. highway No. 75. Irving Strassburg, his father, in a DeSoto automobile was following about 20 or 25 feet behind the motor grader according to some testimony and about 150 feet according to other evidence. Chester Christenson, employed as a mechanic and shop foreman by Peter Hammer, was driving an Oldsmobile owned by Hammer, doing business as Hammer Motor Sales. He was traveling in the same direction as the two Strassburg vehicles, approaching them from behind at a speed of about 60 miles per hour. Milo Nash was driving a Nash automobile and traveling north at a speed of about 45 or 50 miles per hour. Christenson continued on until he was quite close to the DeSoto, when he made the decision to turn left to pass the DeSoto. Then he moved out just

enough to see and discovered, he claims for the first time, the motor grader in front of the DeSoto and the Nash automobile coming from the opposite direction. At this point Christenson decided to go back into his own lane of traffic. In doing so, he hit the left rear of the DeSoto automobile. This, in turn, caused his car to be thrown over into the east lane of the highway and into the path of plaintiff's automobile. The collision which is the subject of this controversy then occurred between the cars driven by Christenson and Nash.

At the close of the trial, Irving Strassburg and Clifford Strassburg each moved the court to direct a verdict in their favor. Plaintiff moved the court to withdraw from the consideration of the jury the question of contributory negligence as to him. All three motions were granted.

Appellants Christenson and Hammer do not question the fact that there is a sufficiency of evidence to sustain the verdict which establishes negligence on the part of Christenson.

Christenson and Hammer assign as error the granting of plaintiff's motion eliminating from the jury's consideration the issue of contributory negligence; the granting of the motions of Irving and Clifford Strassburg to direct the jury to return verdicts in their favor; the court's sustaining objections as to certain evidence and an offer of proof; the denial of their request for an instruction in connection with M. S. A. 169.15, known as the "slow speed" statute; and the denial of their motion for an order vacating and setting aside the verdict and granting a new trial.

In considering the issues raised by the assignments of error, the rule that the supreme court will view the evidence in the aspects most favorable to the verdict does not apply in cases where the trial court has directed a verdict, since such a verdict expresses only an opinion of the court as a question of law and not of fact. Abraham v. Byman, 214 Minn. 355, 8 N. W. (2d) 231; 1 Dunnell, Dig. (3 ed.) § 415. Therefore, since the verdict in this case was directed against Christenson and Hammer, we must consider the evidence in the light most favorable to them.

■ With respect to the assignment of error dealing with plaintiff Nash, it is the position of Christenson and Hammer that plaintiff was meeting the other vehicles; that he had a view of the slow-moving road grader from the front; and that he therefore knew and appreciated that he was meeting such a vehicle and that it was followed by a passenger car. They contend that he had a clear view of the developing dangerous situation for at least half a mile and that he did nothing about it. They claim that the jury well could have found that in the exercise of due care plaintiff should have slowed down or turned out or otherwise guarded against the potential happening of the accident under the circumstances.

While it is true that plaintiff did have a clear view of the situation, reasonable men could not differ on the proposition that plaintiff could not have had notice of any developing dangerous situation until it was too late to do anything about it. At all times until the occurrence of the accident, plaintiff was on his own side of the road and was driving at a speed of from 45 to 50 miles per hour. It was only about a second after he had met the motor grader that the car driven by Christenson hit the car driven by Irving Strassburg, throwing the Christenson car directly into plaintiff's line of travel; according to the testimony of Irving Strassburg, it happened so quickly that plaintiff would have had no chance to do anything about it.

One driving an automobile has a right to assume that the driver of an automobile approaching from the opposite direction will remain on his side of the road until the contrary appears true. Schmitt v. Emery, 211 Minn. 547, 557, 2 N. W. (2d) 413, 418, 139 A. L. R. 1242. Here, when the contrary did appear, as admitted by Christenson and Hammer, plaintiff made a futile attempt to turn to his right. Reasonable persons, viewing the evidence in the light most favorable to Christenson and Hammer, could not find that plaintiff had a duty to do anything but this. Therefore, we feel that it was proper for the trial court to withdraw from the jury's consideration the issue of plaintiff's contributory negligence.

■ With reference to the assignment of error relative to the actions of Clifford Strassburg, it appears that he was driving a

self-propelled orange-colored grader which was used to patrol or grade roads with a gravel surface. The grader is about 7 feet wide and 26 feet long. On this trip the blade was turned lengthwise so that the ends were inside the wheels, and therefore nothing extended out on either side of the wheels. The cab from which the vehicle is driven is about 4 feet wide and about 10 or 11 feet from the ground. It is enclosed with windows all the way around. On the top and rear of the cab are two red lights about three inches in diameter and a blue light about six inches in diameter. (They were not lighted because the sun was still shining.) Directly back of the cab is the motor, which is about $7\frac{1}{2}$ feet high. It further appears that the top speed of the motor grader is 15 miles per hour and that it was being driven at that speed on the day in question. Clifford Strassburg testified that he did not observe whether there were vehicles to the rear at all times since he was paying attention to where he was going in a forward motion and that he had not looked back for about one mile. Therefore, he did not know that either Irving Strassburg or Christenson was approaching from his rear. He was not even conscious of the fact that an accident had happened and did not know of it until Irving Strassburg telephoned his home in Canby.

It is the position of Christenson and Hammer that this situation presented an issue for the jury and that the jury might have held that under the circumstances due care would require the driver of a slow-moving vehicle not only to keep a reasonable lookout to his rear and give warning signs when advisable but also to give way by driving on the shoulder where a situation of danger was being created.

We cannot agree with such a contention. There was no evidence to show that Clifford Strassburg was not on his own side of the road, nor was there evidence that he was driving in an unlawful manner. It must be remembered that he testified that he looked back occasionally. He still had a primary duty to keep a lookout in the direction in which he was moving. To hold that his actions under the circumstances here raised a question of negligence for the jury

would be to impose a duty on the driver of the front vehicle to be on an almost constant lookout to the rear so as to be able to give a warning signal to a fast-approaching car behind him at almost the instant the driver of such a car decided to swing out of his line of traffic to attempt to pass. This we do not believe to be the law. It is our opinion that the trial court properly directed a verdict for Clifford Strassburg under the facts and circumstances here.

■ Coming now to the next assignment of error—the propriety of the trial court's directed verdict in favor of Irving Strassburg— the record discloses that on the morning of the day in question Irving and Clifford Strassburg went in the former's car to Kerkhoven, Minnesota, to examine and purchase a used motor grader. Upon completion of the deal, they agreed that Clifford would operate the motor grader on the way home to Canby and that Irving would drive his DeSoto car in close proximity in case anything should happen to the motor grader en route. This was to be accomplished by Irving's driving ahead with the DeSoto for a few miles and parking, waiting for the grader to catch up and pass, and then after a short interval catching up with the grader again and, after making whatever observations he wanted to make, passing it and repeating the process. Irving stopped just south of Madison and allowed the motor grader to go on ahead. He next proceeded to catch up with it. As he went over the knoll or hill, which has been described as being half a mile north of the scene of the accident, he could see the motor grader ahead of him on the road. Up to this time Irving had been driving between 40 and 45 miles per hour. He claimed that as he started down the slight decline he started to slow down by taking his foot off the accelerator and touching the brakes once in a while and that, when he came to within about 150 feet of the grader, he traveled behind the grader for a distance of 300 feet. (Other estimates offered in evidence put Irving's car from 20 to 25 feet back of the road grader.)

Irving Strassburg testified that, during the time that he was following the motor grader at the same speed as the grader, he knew that Christenson was approaching from the rear but that he con-

tinued on and did not realize that he was going to be hit until he was hit. He also stated that while he was following the motor grader he observed the Nash automobile approaching from the south, driven by plaintiff, and decided not to pass the grader at that point.

It also appears from the record that Christenson was driving the Oldsmobile in the same direction as Irving and Clifford Strassburg and approaching them from the rear. Christenson estimated his speed at about 60 miles per hour. A witness, Irvin Olson, who was traveling in the same direction at a speed of 60 miles per hour, estimated Christenson's speed at about 75 miles per hour. Christenson had passed Olson shortly before the accident, and, according to Olson's testimony, after Christenson passed him and until the happening of the accident Christenson's car continued to pull away from him. Christenson claims that when he rounded the crest of the knoll or hill (half a mile north of the point of impact) he first observed what turned out to be the DeSoto, and that after this he slowed up five or ten miles per hour. However, he claims that he did not realize that the car was really going slow until he was quite close, a distance of about 150 feet, and then the space between himself and the DeSoto closed in quite rapidly. At this point, according to Christenson's testimony, he turned left to avoid the DeSoto ahead of him, and, when he had gone just far enough into the left lane to see beyond the DeSoto, he discovered for the first time the road grader immediately in front of the DeSoto and what turned out to be the Nash car coming toward him. Christenson claims that until this time the road grader, the cab of which was four or five feet higher than the DeSoto, appeared to him to be a carrier on top of the DeSoto. Faced with this situation, he made the decision to get back into the right lane. He then swung right to carry out his intention and hit the left rear of the DeSoto. He was rendered unconscious as a result of this impact and does not remember what happened after that. However, other testimony brings out the fact that, after the first impact, the Christenson car darted across the lane directly into the path of the Nash automobile, and the second collision occurred immediately after that.

The contention of Christenson and Hammer is that, under the Minnesota highway traffic regulation act or under common-law principles, there is evidence in the case from which the jury might have found that the Strassburg DeSoto which followed closely behind the Strassburg grader, both of which were traveling slowly, created a situation of danger which deceived Christenson. It is their claim, in effect, that because of the lack of due care on the part of either or both of the Strassburgs, because of their slow driving and the short distance between their vehicles, their conduct proximately contributed to the first impact, which was in turn the immediate cause of the second impact resulting in plaintiff's injuries. They therefore claim that under the record the issues of negligence and causation as to each of the Strassburgs should have been submitted to the jury.

The statutes claimed by Christenson and Hammer to be controlling are M. S. A. 169.15 and 169.18, subd. 8(a). Section 169.15 reads:

"No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

Section 169.18, subd. 8(a), reads:

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the conditions of the highway."

It is our opinion that these statutes do not apply under the facts and circumstances here.

The only question then is whether, viewing the evidence in the light most favorable to appellants, a jury might have found under the facts here that Irving Strassburg did not act as a reasonable and prudent person.

Irving Strassburg had caught up with the grader driven by his son and had observed plaintiff's automobile approaching him from the south. He decided not to pass the grader until the Nash auto-

mobile had gone by, thus discharging a primary duty toward plaintiff. It appears that Irving was driving at a speed of about 15 miles per hour and, accepting Christenson's testimony, at a distance of 20 feet behind the motor grader. The surrounding circumstances were that the day was clear, visibility was good, traffic was relatively light, and the road was straight and gradually declining toward the Strassburg automobile. Also, it appears that the road grader, not seen by Christenson, was four or five feet higher than the Strassburg car. It is our opinion under such circumstances that no reasonably prudent person in Irving Strassburg's position could have foreseen any harm arising to plaintiff. Therefore, the trial court properly directed a verdict for Irving Strassburg.

■ In connection with the next assignments of error, it is the claim of Christenson and Hammer that the trial court erroneously sustained objections to four questions and an offer of proof. After a careful examination of the record it is our opinion that in each instance nothing prejudicial resulted from the trial court's actions.

■ For their last assignment of error Christenson and Hammer claim that the trial court erroneously refused to give the "slow speed" statute in its instructions to the jury. As stated above, we feel that the "slow speed" statute has no application to the case at bar. It therefore follows that the trial court did not err in denying this requested instruction.

Affirmed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.