EMMA C. SATTER v. HATTIE TURNER AND OTHERS.
HAROLD YOERG AND ANOTHER, COPARTNERS d.b.a.
YOERG'S DAIRY, AND ANOTHER, APPELLANTS.

86 N. W. (2d) 85.

January 25, 1957—Nos. 36,909, 36,910.

2

*Robert J. Tyrrell,* for appellants Turner.
*Quinlivan & Quinlivan,* for appellants Yoerg and Zak.
*Gordon Rosenmeier* and *John E. Simonett,* for respondent.

KNUTSON, JUSTICE.

These appeals arise out of an automobile collision between an automobile owned and driven by plaintiff and one owned by defendant Hammond Turner and driven by his wife, defendant Hattie Turner. Defendants Harold Yoerg and Stanley Yoerg are copartners operating a milk business under the name of Yoerg's Dairy. Defendant Barney

Zak is employed by them as a delivery man and was driving a milk truck owned by them at the scene of the collision. There is no issue as to the liability of the copartners if Zak is liable so they will all be referred to herein as defendant Zak. Similarly, there is no issue as to the liability of Hammond Turner if Hattie Turner is liable.

The collision occurred on Trunk Highway No. 371 within the city limits at the north edge of the city of Little Falls. Highway No. 371 is paved with concrete at the point of the collision. The paved portion is 24 feet wide, with 8-foot unpaved shoulders on both sides. The highway at that point runs generally in a north-south direction and is straight and level for quite a distance both north and south.

Near the point of collision a public street known as Riverview Avenue intersects the highway from the northwest at an angle of about 45 degrees. It does not cross the highway to the east but ends at the west edge of the highway. Riverview Avenue is also a concrete pavement and is 18 feet wide. At the point of intersection with the highway, it fans out so that it is 69 feet wide at the west line of Highway No. 371.

Highway No. 371 is an arterial highway. A standard stop sign is located on the southerly side of Riverview Avenue 32 feet from the west edge of the concrete on Highway No. 371. From this stop sign and from there to the highway itself, an unobstructed view is available to the north along the highway for a distance of 824 feet and to the south for 740 feet.

The maximum speed limit on Highway No. 371 is 30 miles per hour within the city, but, at a point about 115 feet south of the intersection, the speed limit is increased for northbound traffic to 40 miles per hour, and there is a standard sign at that point so indicating. For southbound traffic on the highway, the maximum speed limit is 40 miles per hour until a point about 70 feet south of the intersection is reached, when it is decreased to 30 miles per hour.

At about 3:30 p. m. on September 1, 1954, immediately preceding the collision here involved, plaintiff was driving her Ford automobile in a southerly direction on Highway No. 371 at a lawful speed. Defendants Turner were driving their Buick automobile in a northerly direction on the highway. Defendant Zak was driving a milk truck

owned by his employers in a southeasterly direction on Riverview Avenue approaching the highway.

The testimony of the parties as to what happened as these three vehicles approached the intersection is in hopeless conflict. Zak testified that as he approached the highway he stopped at the stop sign, looked to the left, and saw plaintiff's car coming from the north. He then looked to the south and saw the Turner car coming north about 500 or 600 feet away at a speed which he estimated to be 30 miles per hour. He did not look to the right again but started his truck in low gear and proceeded into the intersection at a speed of about two to three miles per hour. He shifted into intermediate gear (the truck had four speeds forward); made the rather sharp left turn to the north necessary in order to enter the highway in view of the angle at which Riverview Avenue approached it; and had traveled about 150 feet north on the right lane of the highway when plaintiff's automobile passed him. Immediately thereafter he heard a crash to his rear and stopped to find that the Turner car had collided head on with plaintiff's car. He said that he had attained a speed of eight or ten miles per hour immediately before the crash.

Mrs. Turner testified that she was driving about 30 miles per hour; that when she was 50 feet south of the intersection she first saw the Yoerg truck; and that the truck then was ten feet west of the west edge of the highway and moving toward it at a speed of five miles per hour. She did not reduce her speed but sounded her horn. When she saw that the truck was not going to stop, she applied her brakes and turned left to go around it and collided head on with plaintiff. She did not see the approaching car of plaintiff, which she claims was because of the fact that the truck was in front of her.

There is no dispute but that the collision occurred about 117 feet north of the north line of the intersection and that it occurred in plaintiff's lane of travel. The Turner car pushed plaintiff's car 21 feet north. After the collision, they stood locked together 138 feet north of the north line of the intersection.

There were three disinterested eyewitnesses to the collision. Robert Madsen, a 12-year-old boy who was playing in a field near the east side of the highway, testified that the truck came out onto the high-

way and straightened out from its left turn and that he then heard a horn sounded and the squeal of brakes. The truck proceeded north "pretty slow" and the Buick (Turners' car) turned left around the truck and the collision followed.

Dean Wuollet, who was 21 years old, was driving an automobile in the same direction as the Turner car and about two car lengths behind it. When he first saw the Yoerg truck, it was traveling in its lane on the highway. He said that the Turner car not only did not slow down but actually increased its speed to go around the Yoerg truck. He saw no brake lights on the Turner car.

Mrs. Rose May Ford, an occupant of the Wuollet car, said that she heard no horn nor did she see any brake light but that she did notice that the Turner Buick increased its speed as it turned into the west lane to go around the truck.

There were some discrepancies between the testimony of both Zak and Mrs. Turner and their depositions given prior to trial.

The jury returned a verdict in favor of plaintiff against both defendants. On a cross-claim of the Turners against Yoerg's Dairy and Zak, the jury returned a verdict against the Turners. Thereafter, both defendants moved separately for judgments notwithstanding the verdict or a new trial, and the Turners also moved for a new trial on their cross-claim against Yoerg's Dairy and Zak. All of these motions were denied by the trial court. Separate appeals have been taken by the respective defendants from the orders so denying their motions.

As is often the case in a situation such as we have here, each defendant claims that he is free from negligence and that the collision was due to the sole negligence of the other. Their claims will be considered separately.

### TURNER APPEAL

■ The Turners claim that Zak was guilty of negligence as a matter of law and that they were free from actionable negligence. We will consider the claim that Zak was guilty of negligence as a matter of law in connection with his appeal.

The Turners' claim that they were free from negligence is premised upon the assumption that Mrs. Turner's version of the collision was

the only one the jury could accept. Of course, that is not true. It is her claim that, when Zak entered the highway, she was only 50 feet away and that there was nothing she could do to avoid turning out unless she ran into the truck.

The argument that the collision could or could not have happened as she said it did, based upon mathematical calculations of time and distance is not impressive for the reason that such arguments ignore the human element involved and the fact that evidence of speed, distance, and time, used as the basis for such calculations, are at the best approximations of the witness. The jury is not required to accept such estimates as infallible figures, especially where the testimony of other witnesses is in conflict therewith. Here, the jury could find that Mrs. Turner should have seen the Yoerg truck when she was far enough away to do something beside invading the wrong side of the highway in violation of our statute. The jury could also find that, if Mrs. Turner had kept a proper lookout, she would have seen the approaching automobile of plaintiff in time to take some action other than that which she did. Under all the evidence in this case, we have no difficulty holding that the issue of Mrs. Turner's negligence clearly was for the jury and that its determination of such negligence is amply supported by the evidence.

## ZAK APPEAL

Neither do we have any difficulty holding that it was for the jury to say whether Zak was guilty of negligence in failing to keep a proper lookout and in failing to yield the right-of-way. The Turners contend that he was guilty of negligence as a matter of law in failing to stop at the entrance to the highway and to yield the right-of-way to them. Zak claims that he was free from negligence as a matter of law in that, when he entered the intersection, the Turner car was so far away that he had a right to proceed. Neither contention is tenable. The evidence is conflicting as to where the Turner car was when Zak entered the highway. It was for the jury to determine what the facts were in that respect. Zak claims that he stopped at the stop sign, 32 feet from the intersection, and saw the Turner car 500 or 600 feet away. But he overlooks the fact that he then traveled some

32 feet at a rate of two or three miles per hour and did not look again to see where the Turner car was when he actually entered the intersection. It is his claim that when he looked, at the point where the stop sign was located, he had done all that the statute required him to do. We have heretofore dealt with the necessity of stopping at a place where approaching vehicles may be observed.[1] It may be that in some cases one look is enough. It is not the number of times a driver looks for danger but how he looks and what is in sight that is controlling. The duty to yield the right-of-way must be determined as of the time he enters the through highway, not some distance back. If, at that time, approaching traffic constitutes an immediate hazard, he must yield, and it is not enough that he stopped and looked some distance back.

Too much stopping might create a dangerous situation as well as no stopping at all. During the time that Zak remained stopped, approaching traffic which appeared to constitute no immediate hazard at the time he stopped may well have come so near by the time he started his car as to then constitute an immediate hazard. In yielding the right-of-way and in maintaining a proper lookout, it was his duty to do so at a time when traffic that would constitute an immediate hazard, *at the time he entered the intersection,* could be observed. It was not enough that he determined whether approaching traffic would constitute an immediate hazard when he was some distance back from the intersection. In order to comply with this requirement of our statute, it was his duty to look for approaching traffic at a time when it could do some good. The jury could well find that he stopped 32 feet back from the intersection and then looked for traffic but that, by the time he had reached the intersection, approaching traffic which would not have constituted an immediate hazard at the time he looked had become such. The evidence does not show how long he remained in a stopped position. It does show that he proceeded the 32 feet to the edge of the intersection at a rate of speed of only two or three miles per hour. Under these circumstances, the jury could well find not

---

[1]Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66; Bohnen v. Gorr, 234 Minn. 71, 47 N. W. (2d) 459; Bocchi v. Karnstedt, 238 Minn. 257, 56 N. W. (2d) 628; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

only that he failed to yield the right-of-way to traffic which did constitute an immediate hazard at the time he entered the intersection but that he failed to keep a proper lookout for such traffic. But if, when Zak entered the intersection, the Turner car was so far away that it did not constitute an immediate hazard *at that time,* failure to again stop and look would not constitute a proximate cause of the collision. It was for the jury to say where the Turner car was when Zak entered the intersection, and the ultimate determination of negligence and proximate cause of defendant Zak rested upon the determination of that fact.

■ Finally, defendant Zak contends that the court erred in submitting to the jury the so-called "slow speed" statute, M. S. A. 169.15, which reads in part:

"No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic *except when reduced speed is necessary* for safe operation or *in compliance with law*." (Italics supplied.)

In the application of our statutory traffic rules, the correlative rights and duties of drivers on the highway must be kept in mind. Here it was the duty of Zak to stop and yield the right-of-way to those approaching on the through highway who were so close to the intersection as to constitute an immediate hazard under § 169.20, subd. 3, which reads in part:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, *but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway*." (Italics supplied.)

Assuming that at the time Zak entered the highway there was no traffic approaching so near the intersection as to then constitute an immediate hazard, he would have a right to enter the highway, and it

then became the duty of those approaching the intersection to yield the right-of-way to him. In other words, having lawfully entered the highway, he had a right to be there and to expect others to honor his right to be there. Section 169.14, subd. 1, also comes into play here. It reads:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. *In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.*" (Italics supplied.)

It is evident from this provision that our legislature had in mind the necessity of reducing speed to avoid colliding with those who may be entering a highway in compliance with law. Assuming then that Zak entered the highway in compliance with law, it became the duty of approaching traffic to drive at such a reduced speed as to avoid colliding with him.

■ To hold that the "slow speed" statute is applicable here without any qualification would mean that, if Zak approached the through highway and then observed that no traffic was approaching so near as to constitute an immediate hazard, he still could not proceed unless he did so at the same speed as other vehicles on the highway were traveling. We should not apply our traffic code so as to make it impossible to comply therewith. There are cases in which the "slow speed" statute has no application.[2]

In our opinion in Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97, there are some statements that, taken alone, might be said to support plaintiff's position that it was proper to instruct the jury on the "slow speed" statute as was done here. Three members of this court dissented. An examination of the case will show that we held that giving the statute was not reversible error because it was

---

[2]Howard v. Marchildon, 228 Minn. 539, 37 N. W. (2d) 833; Nash v. Christenson, 241 Minn. 164, 62 N. W. (2d) 800.

given without objection. After discussing the applicability of the statute, we said (212 Minn. 177, 3 N. W. [2d] 100):

"\* \* \* at the trial nothing was said about these two sections, criticized for the first time on the motion for new trial. Then and now, the only complaint is that these sections were 'inapplicable' to the facts and 'misleading.' \* \* \*

\* \* \* \* \*

"\* \* \* if counsel thought the reading of these statutes was harmful to plaintiff's cause, in fairness to the court and opposing counsel, attention should have been called thereto promptly to avoid error. A verbal error or unintentional misstatement of law or fact which could have been corrected at the trial had attention been called to it by counsel is not such error as requires reversal unless the erroneous instructions complained of were 'on some controlling proposition of law.' \* \* \* Here, these statutes, as we read them, are not those of controlling propositions of law, but rather, if at all, merely such misstatements of fact or inaccuracies as are often likely to creep into a charge orally delivered to the jury."

We do not consider that decision controlling here.

It is common knowledge that it takes some time and some distance for a motor vehicle, which has come to a stop in compliance with our statute regarding stopping before entering a through highway, to accelerate to the speed of the traveling public. The "slow speed" statute should have no application until a vehicle which is lawfully entering a through highway has had such reasonable time and opportunity as is essential for such vehicle to acquire the speed of other vehicles on the highway. Any other application of this statute would make it impossible for a person to enter many of our through highways. If the statute is to be given at all, under the circumstances of this case it should have been given with the qualification that, if the jury finds that defendant lawfully entered the highway, the "slow speed" statute has no application until defendant has been on the highway a sufficient time and distance so that he could, under normal operations of an automobile, acquire such speed as not to impede traffic. Only by so doing can we apply all provisions of our traffic

code in a manner that makes sense. It would then become a jury question whether defendant had entered the highway lawfully and whether he had been there sufficiently long to have acquired a speed that did not impede traffic in violation of this law.

■ Under the instructions in this case the jury might well have found that Zak was not guilty of negligence in failing to maintain a proper lookout or in failing to stop but that he did violate the "slow speed" statute as given by the trial court and that liability followed. The court simply read the statute without any explanation as to how it should be applied. It is true that the court did read the other statutory provisions set forth above, but the application of these conflicting statutory provisions was left to the jury without any explanation. The court then read part of § 169.96 and explained it as follows:

" 'In all civil actions, a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only.'

"Now, that simply means this: that if you find from the evidence that either driver *violated any of the statutes* I just read, then you should find the violator was negligent unless all the facts, conditions and circumstances disclosed by the evidence furnish such an explanation or excuse for violating such statute or statutes that you are not satisfied by a fair preponderance of the evidence that it was negligence to violate any of the provisions I read. And in this connection bear in mind that the violation of a statute, of course, is of no consequence unless it was a proximate cause of the collision." (Italics supplied.)

The net result of these instructions was that the jury was told that, from a violation of the "slow speed" statute, the jury could find negligence unless it was explained or excused. Ordinarily that is enough when dealing with a statutory provision clearly applicable to the facts, but, when a statute has only limited application, in order to apply the prima facie rule some explanation of the proper field of application of the statute should be given. If the jury then found in this case that

Zak had been on the highway a sufficient time and distance so that he could have attained a speed which would not have impeded traffic, the prima facie rule would then come into play and he would have to proceed to show some excuse or justification for it.

We think that it was error to give the "slow speed" statute without qualifying its application, and such error was so prejudicial to these defendants that there must be a new trial on the issue of the negligence of Zak.

There is no issue before us as to the amount of the verdict. Inasmuch as we find no ground for disturbing the verdict as against the Turners, plaintiff should not be compelled to relitigate the amount of her damages. The orders are therefore affirmed as to defendants Hammond Turner and Hattie Turner, and a new trial is ordered as to defendants Harold Yoerg and Stanley Yoerg, copartners doing business as Yoerg's Dairy, and Barney Zak only on the issue of negligence and proximate cause of these defendants.

UPON REHEARING.

On November 8, 1957, the following opinion was filed:

KNUTSON, JUSTICE.

A rehearing was granted in this case because of plaintiff's insistence that we were in error in holding that the trial court erred in submitting to the jury, as a possible ground for finding defendant Zak negligent, a violation of the so-called "slow speed" statute (M. S. A. 169.15). Basically, it is plaintiff's contention on this rehearing: (1) That it was not error to submit the "slow speed" statute without qualification; that plaintiff did not request submission of the statute; and that, if Zak desired a qualification of it, it was his duty to request the court to so qualify this statute; (2) that the court did sufficiently qualify the statute; (3) that the exception taken by Zak to submission of the statute at all was insufficient to preserve his right to review the propriety of the court's failure to qualify the application of the statute; and (4) that Zak owed a different duty to plaintiff than to defendant Turner and that the "slow speed" statute was properly submitted as far as plaintiff was concerned.

In a reconsideration of these questions, it is necessary to have in mind

what action Zak did take to protect his record. While the record before us fails to show what transpired in conferences between counsel for the respective parties and the court, counsel here, on oral argument and in their briefs on rehearing, have, with commendable frankness, agreed that prior to delivery of the court's charge to the jury all counsel conferred with the court about the applicability of the "slow speed" statute among other things. According to both counsel for plaintiff and counsel for defendant Zak, it seems to be agreed that counsel for plaintiff did not request submission of the "slow speed" statute but did state to the court that he thought it was relevant. Counsel for defendant Turner stated that he wanted the statute given as part of the court's charge. Counsel for Zak thereupon informed the court that if the statute was given he would except to it, which he did after completion of the court's charge. It would seem, therefore, that in a consideration of the matters now before us on rehearing we may assume that the court was advised prior to delivery of its charge to the jury that defendant Zak objected to the giving of the statute at all, and the record does show that he did except to it after the court's charge. It would make little difference who requested the instruction if it was prejudicial error to give it. The court informed the jury that one of the claims of plaintiff was that Zak was negligent in driving at such a slow speed as to impede the normal and reasonable movement of traffic. The statute was applied in favor of plaintiff as well as defendant Turner. The impact upon the jury was the same, and the error was prejudicial, no matter who formally requested the instruction.

In this argument on rehearing and in her brief, plaintiff erroneously proceeds on the theory that in our original opinion we held that it was proper to instruct the jury on the "slow speed" statute. We did not so hold. We held that under the facts of this case it was improper to give the statute unless it was qualified in such a way that, before the jury could apply it, it must be found that facts existed upon which the statute could operate. If, on a new trial, evidence should be adduced showing that Zak, after he had entered the intersection and had made his turn onto the highway, was on the highway long enough before defendant Turner turned out into plaintiff's lane so that he

had had a reasonable opportunity to acquire the speed of the normal traffic on the highway, then it would be proper for the court to instruct the jury that in such event they might find negligence from a violation of the statute.

It must be kept in mind that the "slow speed" statute and the right-of-way statutes governing the right of defendant Zak to enter the intersection do not operate as adjuncts of each other. As we have pointed out in our original opinion, if Zak had a right to enter the intersection, it was the duty of other approaching traffic to so reduce their speed as to permit him to safely make such entry. The "slow speed" statute could not come into play until the statutes governing his right to enter the intersection had ceased to operate. In other words, by the time he had been on the highway sufficiently long to acquire the speed of the normal traffic thereon, there no longer would remain any question as to his right to enter the intersection. Conversely, as long as the question did remain as to his right to enter the intersection, it could not be said that he had been on the highway a sufficient length of time so that the "slow speed" statute would have any application. Under the trial court's instruction, the jury could well have found that, even though Zak had a legal right to enter the highway, he still could be found negligent for a violation of the "slow speed" statute even though he had not been on the highway long enough so that he had become part of the normal stream of traffic. To so hold would deprive Zak of the rights he had when he lawfully entered the intersection. This, we held, was prejudicial error.

Plaintiff next contends that it was incumbent upon Zak to request a qualification of the application of the statute if he desired to have it qualified. We think not. It was error to give it at all under the evidence in this case unless qualified. Zak not only advised the court before delivery of its instruction that he would except if it was given but did except after it was given. We do not think that he should be required to do more. In Peterson v. Western Union Tel. Co. 72 Minn. 41, 46, 74 N. W. 1022, 1023, 40 L. R. A. 661, 663, we said:

"* * * Counsel called the court's attention specifically to the particular part of the charge excepted to, embodying it verbatim in his exception. We do not think he was required, under the circumstances, to

go further, and explain to the court the reasons why the charge was erroneous."[3]

Here, Zak informed the court that he objected to the giving of the statute at all, and he excepted to its being given to the jury. If plaintiff or defendant Turner were of the opinion that there was evidence in the case justifying the submission of this statute, it was incumbent upon them to request it, as Turner did. Plaintiff acquiesced in its submission. If it was to be given by the court at all, it was incumbent upon the court to explain to the jury when and how it could be applied.[4] Zak had done all that he should be required to do in calling the court's attention to his objection and his exception to giving the statute at all. While the error here was with respect to fundamental law or a controlling principle, the result would be the same even if it were considered only a verbal error for the reason that the court was advised, before the instruction was given, that Zak objected to giving the statute at all.

Finally, plaintiff claims that Zak owed a different duty to plaintiff than to defendant Turner and that, even if it was error to give the "slow speed" statute as to Turner, it was not error as to plaintiff. We do not believe that this contention is tenable. Either the "slow speed" statute applied as to both or it had no application. Plaintiff asks us in effect to hold that, even if Zak was not negligent under the "slow speed" statute as to Turner and even if he had a legal right to enter the intersection, still he could be held negligent as to plaintiff under the statute even though he had not been on the highway long enough to acquire the speed of the normal traffic thereon. We do not believe that the statute can be given such construction. A "slow speed" statute is intended to apply to vehicles traveling in the normal stream of traffic.[5] It is intended for the protection of those traveling in the same

---

[3]See, also, Kollodge v. F. and L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62.

[4]Kollodge v. F. and L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62.

[5]Apparently that is the construction placed upon the statute by the Department of Highways of the State of Minnesota. In Minnesota Driv-

direction as the slow vehicle as well as those approaching from the opposite direction. Here, it had no application until Zak had entered the normal stream of traffic; that is, until he had a reasonable opportunity to acquire the speed of such traffic. When that occurred, it applied equally for the protection of Turner and plaintiff. To hold otherwise would deny Zak the rights given him by the statutes relating to his right to enter the intersection if he did so in accordance with law, as we pointed out above. This we have also discussed in our original opinion.

After a reconsideration of the matters now submitted, we adhere to our original opinion.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that we erred in granting defendant Zak a new trial; and that the order of the trial court should be affirmed. Upon rehearing it was made clear for the first time that it was defendant Turner who insisted that the jury be instructed with reference to the so-called "slow speed" statute; and that plaintiff did not request its submission. In response to a question from the court, plaintiff's counsel merely stated that he thought the statute was relevant.

It is clear that Zak insisted that the statute was not applicable even to a limited extent; and that his exception to the instruction thereon was not a qualified one but a direct attack upon the submission of the statute in its entirety. Plaintiff contends that, if Zak desired to have the statute qualified, it was incumbent upon him to request the court to make such a qualification. With this I agree.

This was a three-party lawsuit in which there was a controversy between the two defendants. In such a situation the plaintiff should

---

er's Manual, p. 22, we find the following:

"If you drive at such a slow speed that you interfere with or block *the normal flow of traffic,* you encourage other drivers to take chances in passing you, which endangers both yourself and the other drivers using the highway.

"It is unlawful for you to needlessly drive at such a slow speed as to hold up or block *normal movement of traffic.* This does not apply when slow speed is necessary due to special conditions or because of the type of vehicle you may be operating." (Italics supplied.)

not be compelled to take sides with either defendant at the risk of losing if he should fail to do so. On a primary issue between defendants, each defendant should be required to protect the record in so far as his contentions with respect thereto are concerned.

On the record before us, whether Zak was guilty of a violation of the "slow speed" statute clearly presented a jury question. Where a statute applies wholly, its recitation should be sufficient. If one of the parties deems that it should be qualified, he should request an instruction to such effect, or at least suggest to the trial court that the statute's aplication was limited in the situation presented. To hold in such cases that only a general exception to submission of the statute need be made would permit a defendant taking such an exception to await the outcome of the case and, if the verdict were adverse to him, to then obtain a new trial at the expense of a plaintiff not involved in the controversy between the defendants.

The case of Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97, though decided by a divided court, is the law of this state. Therein the "slow speed" statute was given and the instructions approved even though the automobile involved was disabled and being propelled by hand at slow speed. There this court stated (212 Minn. 177, 3 N. W. [2d] 100):

"That plaintiff's car was proceeding at 'slow speed' and, 'so far as running is concerned,' was 'entirely unsafe until repaired' are conceded facts. *If these facts could be found to enter into the chain of causation, these provisions [one the "slow speed" statute], with propriety, could be read to the jury.*

"* * * And if counsel thought the reading of these statutes was harmful to plaintiff's cause, in fairness to the court and opposing counsel, attention should have been called thereto promptly to avoid error." (Italics supplied.)

There we held that the reading of the "slow speed" statute did not involve a controlling proposition of law but rather only an inaccuracy likely to creep into a charge orally delivered to the jury. The court pointed out that an unintentional misstatement of law which could have been corrected at the trial, if attention had been called

18

to it, would not require a reversal unless it related to "some controlling proposition of law"; and restated the rule expressed in Sassen v. Haegle, 125 Minn. 441, 444, 147 N. W. 445, 446, 52 L. R. A. (N. S.) 1176, 1178, that:

"* * * *Inaccuracy in expression, failure to instruct on every possible hypothesis, or inadequate treatment of some phase of the law applicable to the controversy* does not, as a rule, entitle a party to take advantage thereof upon the motion for a new trial *where, had the shortcoming in the charge been called to the attention of the court by an exception or suggestion before the jury retired, we might readily assume that the court would have promptly corrected the inadvertence."* (Italics supplied.)

The majority opinion upon rehearing relies upon Peterson v. Western Union Tel. Co. 72 Minn. 41, 74 N. W. 1022, 40 L. R. A. 661, and Kollodge v. F. and L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62, both of which appear readily distinguishable. In the Peterson case it was urged that defendant was not in a position to raise an objection to the charge for the reason that he had objected to it exclusively upon one ground and "did not specifically call the court's attention to the particular vice in this part of the charge." In granting a new trial, this court stated (72 Minn. 46, 74 N. W. 1023):

"Counsel took two entirely distinct exceptions: First, to the submission of the question of exemplary damages to the jury at all; and, second, to the part of the charge which stated the grounds upon which the jury might award such damages; and we cannot see anything in what followed that amounted to a waiver of either of the exceptions or a merger of the second in the first. The second exception was sufficiently explicit. Counsel called the court's attention specifically to the particular part of the charge excepted to, embodying it verbatim in his exception. We do not think he was required, under the circumstances, to go further, and explain to the court the reasons why the charge was erroneous."

In Kollodge v. F. and L. Appliances, Inc. *supra,* both subds. 4(b) and 4(d) of M. S. A. 169.18 were applicable to the fact situation presented. In charging the jury, however, the trial court submitted for

its consideration only § 169.18, subd. 4(b). Accordingly, it was held error not to give the jury all applicable provisions of this section.

In the instant case but one part of the "slow speed" statute was involved and this part was given to the jury in its entirety. Only a general exception to its submission was taken by defendant Zak and he should not be permitted to now urge that the trial court's failure to qualify its application constituted reversible error.

DELL, CHIEF JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Thomas Gallagher.