RUSSELL AANENSON AND ANOTHER v. NORMAN
ENGELSON AND ANOTHER.

124 N. W. (2d) 360.

November 1, 1963—No. 38,839.

2

*Mott, Grose & Von Holtum, Clint Grose,* and *Mort B. Skewes,* for appellants.

*Carroll, Cronan, Roth & Austin* and *Robert Austin,* for respondents.

ROGOSHESKE, JUSTICE.

This appeal arises out of a motor vehicle accident in which a truck collided with the left rear of an automobile causing personal injury to plaintiff Florence Aanenson. Her husband joined in bringing this action for damages. After a verdict for defendants, plaintiffs appeal from an order denying their motion for a new trial limited to damages only or in the alternative for a new trial on all issues.

Three questions are presented for review, namely, whether defendants should have been held liable as a matter of law, whether the issue of contributory negligence should have been submitted to the jury, and whether there was error in the instructions to the jury.

The collision occurred at about 11 a. m. on July 20, 1960, on U. S. Highway No. 16 where it enters the eastern edge of the village of Magnolia, Minnesota. The highway at this point is a 20-foot-wide, concrete highway running east and west. A short time before the accident, Mrs. Aanenson left her farm home located northeast of Magnolia. She was driving a new 1960 Ford owned by her brother whom she was taking to Sioux Falls, South Dakota, for medical attention. When she left the farm one of the rear tires appeared to be low and, fearing that there might be a slow leak, she determined to stop in Magnolia to investigate whether the tire had "lost any more air" before taking it to a service station. The weather conditions were good and the pavement dry. Viewing the evidence most favorably to sustain the verdict, it appears that Mrs. Aanenson was driving west, and as she approached the

village she began decreasing her speed and did reduce it below the 40- and 30-miles-per-hour posted limits before she was required to do so in obedience to these signs. At the same time defendant Norman Engelson, an employee of defendant Ray Engelson, d.b.a. Engelson Truck Service Company, was operating his employer's 1959 Chevrolet gravel truck some distance behind the Ford automobile. As plaintiff driver was passing the 40-miles-per-hour speed sign, she noticed defendant's truck some distance behind and thereupon turned on the automatic signal for a right turn, intending to drive off the highway onto a side road or some undetermined point beyond upon the right shoulder and stop to inspect the tire. When she turned on her signal device she was "just a little ways" east of the side road known as Kenneth road, a 27-foot-wide, blacktop highway extending off Highway No. 16 to the north at a right angle. At this location the north shoulder of Highway No. 16 is somewhat wider than 10 feet and is level with the surface of the highway and Kenneth road, the latter road flaring to a width of about 60 feet as it joins the shoulder and traveled surface of Highway No. 16. The centerline of Kenneth road is about 160 feet east of a concrete private driveway, extending northerly, known as Lester driveway, in front of which the impact occurred. Because plaintiff driver noticed some imperfection in the surface of the intersection, she decided not to turn right on Kenneth road and continued 160 feet west with decreasing speed and her right turn-signal still operating. Defendants' version of how the collision occurred is found in the truckdriver's testimony as follows:

"Q. Now, Norman, in your own words will you tell the jury what happened?

"A. Well, I was going west on 16 and come upon this car, and this car made like she was going to go towards the Kenneth blacktop, on the Kenneth blacktop, and come back out on the street and up on the road again; and I figured that she was going to turn at the Kenneth blacktop, and then she went down the road further and she made a little jog like she was going to go into the Lester driveway, and then she was about half off the road and just about stopped, and I looked up to go around, and there was cars coming, and I hit the brakes as

hard as I could, and I got a hard pedal and caught the back end of her car."

■ From the close of the testimony plaintiffs have maintained that the court should have directed a verdict on the issue of liability. They argue that as a matter of law the truckdriver's negligence, in any one or all of the five following respects, was the sole cause of the collision: (1) Driving with known defective brakes; (2) following another vehicle too closely; (3) failing to maintain a proper lookout; (4) driving at excessive speed; and (5) misjudging the intentions of plaintiff.

Plaintiffs base the first assignment of error principally upon the claim that the evidence compels a finding that the truckdriver, by his own admission, was driving with known defective brakes in violation of Minn. St. 169.67, subds. 1 and 5.[1] They rely on Lee v. Zaske, 213 Minn. 244, 6 N. W. (2d) 793, where a motorist who drove at high speeds knowing that his brakes would not hold at such speeds was held to be negligent as a matter of law. It is true that the truckdriver testified that he got a "hard" pedal when he applied his brakes and that he knew his brakes were "wore down a little bit" and needed to be pumped—once when the truck was empty and twice when it was loaded—in order to raise the pedal and put the brakes in working order. We agree that these admissions standing alone would show a violation of the statute and would require a finding of negligence and a jury instruction to that effect. However, in determining whether a jury issue was created, we cannot ignore the testimony that the brakes, although worn, were adequate after being pumped to control the movement and to stop the truck, and also that the driver varied the import of his testimony quoted above by insisting that he had pumped the brakes immediately before applying them to avoid striking the Ford. Since the pertinent provisions of the statute require only

[1] § 169.67, subd. 1, provides in part: "Every motor vehicle, * * * when operated upon a highway, shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle * * *."

§ 169.67, subd. 5, provides in part: "All brakes shall be maintained in good working order * * *."

that brakes must be maintained in such good working order as to be adequate to control the movement of and to stop the vehicle, it is reasonable to infer, and thereby find, that the brakes after they were pumped complied with the statutory standard. In Lee v. Zaske, *supra,* there was no evidence which would have permitted a finding that the brakes were adequate to control or stop the vehicle. Whether the brakes were adequate and whether the driver in fact pumped the brakes were disputed factual issues for the jury and were submitted upon proper instructions.

We need not further detail the testimony to demonstrate that the court was required to submit all of the plaintiffs' claims of negligence against defendants to the jury for the record leaves no doubt that the evidence, including the inferences to be drawn therefrom, was conflicting and would neither support an instruction that defendant driver was negligent as a matter of law in any respect claimed nor justify a directed verdict on liability.

The same is equally true of plaintiffs' contention that as a matter of law Mrs. Aanenson should have been absolved from the charge of contributory negligence. The testimony of the truckdriver alone, if believed, permitted the jury to find that she failed to use due care for her own safety. Her testimony, on which plaintiffs mainly rely, was in large part uncertain and indefinite. Although her version of the facts permitted the finding of no negligence, it differed from defendants' claims that her negligence in several respects contributed to cause the collision. Defendants claimed that she was negligent in failing to keep a proper lookout to the rear and forward, in failing to properly turn her vehicle off the highway when it was reasonably safe to do so, in giving a misleading signal of her intentions, and in impeding the normal and reasonable movement of traffic by driving at an unnecessarily slow speed for an unreasonable distance. There is evidence to justify these claims and to support a finding of contributory negligence. In viewing the entire record it appears most probable that the jury found that the cause of the accident resulted from the concurrent negligence of the truckdriver and Mrs. Aanenson.

Finally, plaintiffs claim that the court erred in the instructions

to the jury. A request was made to caution the jury that § 169.19, subd. 4,[2] relating to a change of course or a turning vehicle, does not require that a driver before making a turn "must know that there is absolutely no possibility of an accident." The court refused the request. The request was not to qualify the application of the statute but to explain its meaning in negative terms. Such manner of explanation is inadvisable where the language is plain and there exists, as in this record, no reasonable likelihood of misinterpretation by the jury or any necessity to correct an erroneous explanation by counsel in final argument.[3]

Plaintiffs also contend that § 169.15,[4] the slow-speed statute, should not have been read to the jury because it is inapplicable to a turning vehicle which necessarily must slow its speed. We readily agree that slow speed is necessary for turning a vehicle from one roadway to another and merely decreasing speed for that purpose would not constitute a violation of the statute. However, it does not follow that the statute should never be applied to a turning vehicle. This statute has caused difficulties in the past,[5] perhaps because its broad language

---

[2] § 169.19, subd. 4, provides: "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in this section, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety, and then only * * * after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by the movement."

[3] State v. Becker, 231 Minn. 174, 42 N. W. (2d) 704; Lee v. Lee, 248 Minn. 496, 80 N. W. (2d) 529.

[4] § 169.15 provides in part: "No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

[5] See, Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97; Howard v. Marchildon, 228 Minn. 539, 37 N. W. (2d) 833; Nash v. Christenson, 241 Minn. 164, 62 N. W. (2d) 800; Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85, 66 A. L. R. (2d) 1178; Lee v. Smith, 253 Minn. 401, 92 N. W. (2d) 117.

invites application while its significance as a cause of motor vehicle collisions usually requires a restricted application. The language indicates that the statute was intended to apply whenever a driver proceeds at a speed slower than permitted or reasonable under the circumstances, and which not only is unnecessary for the safe operation of his vehicle but also results in impeding the normal and reasonable movement of other vehicles traveling upon the highway. If sufficient evidence is introduced to sustain a finding that the prohibited type of slow speed existed and that it played a substantial part in bringing about the collision, the statute is relevant and a party is entitled to have its provisions included in the charge.

To determine its application in this case, we view the evidence in the light most favorable to defendants' version of the facts. The jury could find that Mrs. Aanenson traveled a considerable distance on the highway after beginning her signal to turn, during the course of which she continued to reduce her speed without giving an indication thereof by brake light or otherwise, and that she passed not only an intersecting highway but a considerable amount of open shoulder upon which she could have effected a turn or change of course. It also appears that her speed was unnecessarily slow and impeding because she was indecisive as to when and where she was going to turn, that she made a slight jog toward the Kenneth road followed by a further reduction in speed, and that she almost stopped partly on and partly off the highway at the Lester driveway without adequate indication that this was her destination. The record, therefore, shows ample evidence from which the jury could find that plaintiff driver violated this statute.

Defendants' further argument that, if the statute were given, its application should have been limited by a qualifying instruction is not presented because the claimed omission was neither requested nor assigned as error below.[6] The rules contemplate that a request should be made for such an explanation to the end that the court may have the benefit of any conflicting contentions of the parties before formulat-

---

[6]Rule 51, Rules of Civil Procedure.

8

ing a proper, and perhaps acceptable, qualifying or cautionary instruction.

In the instant case it may have been desirable to explain to the jury the relationship between the change-of-course statute and the slow-speed statute as an aid to understanding how one may operate as an adjunct of the other. However, the court did preface the reading of all statutory provisions by cautioning that it was for the jury to decide from a determination of the facts which statutes given were applicable. Viewing the charge as a whole, we believe this brief cautionary instruction was sufficient under the circumstances of this case since the statutes included were not inconsistent with each other as in Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85, 66 A. L. R. (2d) 1178, nor was the slow-speed statute "relevant only upon a single interpretation of the facts."[7]

Affirmed.

_____

[7]Tollefson v. Ehlers, 252 Minn. 370, 376, 90 N. W. (2d) 205, 210.